1 | SEYFARTH SHAW LLP
Jon D. Meer (SBN 144389)
2 | E-mail:  jmeer@seyfarth.com
Sheryl L. Skibbe (SBN 199441)
3 | E-mail:  sskibbe@seyfarth.com
Casey J.T. McCoy (SBN 229106)
4 | E-mail: cjtmccoy@seyfarth.com
Maya Harel (SBN 291990)
5 | E-mail:  mharel@seyfarth.com
2029 Century Park East, Suite 3500
6 | Los Angeles, California 90067-3021
Telephone:     (310) 277-7200
7 | Facsimile:     (310) 201-5219

8 | Attorneys for Defendant
NIKE RETAIL SERVICES, INC.

9

10

11 | UNITED STATES DISTRICT COURT

12 | NORTHERN DISTRICT OF CALIFORNIA

13

14 | PAYAL PATEL, an individual, on behalf of
herself, on behalf of all persons similarly situated,
15 | and as the representative of the State of California,

| Case No. 3:14-cv-04781-RS

| Assigned to the Hon. Richard Seeborg

16 | Plaintiff,

| **DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
17 | v.

| OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT; MEMORANDUM
18 | NIKE RETAIL SERVICES, INC., a Corporation;
and DOES 1 through 50, inclusive,

| OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

19

20 | Defendant.

| [*Filed concurrently with Declaration of Casey
J.T. McCoy in Support of Defendant's Motion for
Summary Judgment or, in the Alternative, Partial
21 | Summary Judgment; and [Proposed] Order
Granting Defendant's Motion for Summary
22 | Judgment*]

23 | DATE:          April 2, 2015
TIME:          1:30 P.M.
24 | CTRM:          3

25

26

27

28

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;
CASE NO. 3:14-CV-04781-RS

18762195v.7

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 2

II.   STATEMENT OF ISSUES TO BE DECIDED ............................................ 3

III.  BACKGROUND FACTS ............................................ 3

IV.   LEGAL ARGUMENTS AND AUTHORITIES ............................................ 5

    A.    Plaintiff Meets All Of The Elements Of The Executive Exemption ............................. 5

    B.    Plaintiff Managed A Customarily Recognized Department or Subdivision Within Defendant's Retail Operations ............................................ 6

    C.    Plaintiff Directed The Work Of Two Or More Employees ............................. 7

    D.    Plaintiff Made Suggestions And Recommendations As To The Hiring, Discipline, And Firing Of Employees, As Well As To Promotions And Other Changes In Status, That Were Given Particular Weight ............................................ 8

        1.    Plaintiff Made Decisions or Recommendations For Hiring Of Employees That Were Given Particular Weight ............................................ 9

        2.    Plaintiff Made Decisions Or Recommendations For Firing Employees That Were Given Particular Weight ............................................ 9

        3.    Plaintiff Made Decisions Or Recommendations For Promotions, Advancement, Discipline Or Other Changes in Status That Were Given Particular Weight ............................................ 10

    E.    Plaintiff Regularly Exercised Discretion And Independent Judgment ............................ 12

        1.    Plaintiff's Work Required Her To Prioritize Issues, Problem Solve and Make Decisions About Work Flow ............................................ 12

        2.    Plaintiff's Work Required Her To Make Decisions About Coaching, Training and Developing Employees ............................................ 15

    F.    Plaintiff Was Primarily Engaged In Exempt Work ............................................ 17

        1.    Plaintiff Was Responsible For Employee Performance And Ensuring Compliance With Rules and Policies At All Times Throughout Her Entire Shift ............................................ 18

        2.    Plaintiff Spent 80% Of Her Time On The Sales Floor Managing Employees And Store Operations ............................................ 19

        3.    Plaintiff Spent 20% Of Her Time On Office Work, Such As Documentation Of Performance Management, Planning, And Collaborating With The Management Team ............................................ 22

i

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

18762195v.7

G.     Plaintiff's Salary Is More Than Double California's Minimum Wage ........................... 23

H.     All Of Plaintiff's Derivative Claims Fail Because Plaintiff Was Properly
       Classified As An Exempt Employee .................................................................... 24

V.     CONCLUSION .................................................................................................................. 24

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;
CASE NO. 3:14-CV-04781-RS

18762195v.7

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abdullah v. U.S. Sec. Associates, Inc.,*
 731 F.3d 952 (9th Cir. 2013) ...............................................................................22

*Akaosugi v. Benihana Nat'l Corp.,*
 2012 WL 3999855 (N.D. Cal., Sept. 7, 2012) .................................................9, 12

*Baldwin v. Trailer Inns, Inc.,*
 266 F.3d 1104 (9th Cir. 2001) ..............................................................................10

*Donovan v. Burger King Corp.,*
 675 F.2d 516 (2d Cir. 1982)..................................................................................21

*Friend v. Hertz Corp.,*
 2014 WL 4415988 (N.D. Cal. Sept. 8, 2014) .......................................................23

*Guiltoyle v. Dollar Tree Stores, Inc.,*
 2014 WL 66740 (E.D. Cal., Jan. 8, 2014) ............................................................12

*Leatherbury v. C&H Sugar Co., Inc.,*
 911 F. Supp. 2d 872 (N.D. Cal. 2012) ..............................................................9, 15

*Mellas v. City of Puyallup,*
 201 F.3d 444, 1999 WL 841240 (9th Cir. 1999) ..................................................21

*Mendoza v. PetSmart, Inc.,*
 2012 WL 9506073 (C.D. Cal., June 14, 2012) ..................................................6, 17

*Musgraves v. Sears Holding Management Corporation,*
 2012 WL 3222905 (C.D. Cal. July 19, 2013) .......................................................19

*Whiteway v. Fedex Kinko's Office and Print Serv., Inc.,*
 2007 WL 2408872 (N.D. Cal. Aug. 21, 2007), *reversed*..............................10, 17

*Wilbur v. Silgan Containers Corp.,*
 2008 WL 3863700 (E.D. Cal. Aug. 19, 2008)..............................5, 6, 7, 9, 11, 14, 17, 21, 24

*Williamson v. Cook Composites and Polymers Co.,*
 2009 WL 4730887 (C.D. Cal. Dec. 7, 2009) ........................................................14

**STATE CASES**

*Combs v. Skyriver Communications, Inc.,*
 159 Cal. App. 4th 1242 (2008) .........................................................................5, 15

i

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;
CASE NO. 3:14-CV-04781-RS

18762195v.7

*Heyen v. Safeway Inc.*,
  216 Cal. App. 4th 795 (2013) ...................................................................................23

*In re United Parcel Serv. Wage & Hour Cases*,
  190 Cal. App. 4th 1001 (2010) ................................................................6, 12, 16, 24

*Nordquist v. McGraw Hill Broadcasting Co.*,
  32 Cal. App. 4th 555 (1995) ..............................................................................12, 17

*Price v. Starbucks*,
  2011 WL 169177 (Cal. App. 2 Dist. Jan. 20, 2011) ...............................................24

*Ramirez v. Yosemite Water Co.*,
  20 Cal. 4th 785 (2010) ...........................................................................................18

*Sav-On Drug Stores, Inc. v. Sup. Ct.*,
  34 Cal. 4th 319 (2004) .............................................................................................5

*Soderstedt v. CBIZ Southern California, LLC*,
  197 Cal. App. 4th 133 (2011) ..................................................................................23

STATE STATUTES

Cal. Bus. & Prof. C. § 17200 ...........................................................................................24

REGULATIONS

8 Cal. Code Regs. § 11070.................................................................................3, 5, 12, 18

29 C.F.R. § 103(b) .............................................................................................................6

29 C.F.R. § 541.102 .................................................5, 6, 8, 11, 14, 17, 19, 20, 21, 23

29 C.F.R. §§ 541.104-541.111 ......................................................................................5, 6

29 C.F.R. § 541.106(a) .....................................................................................................21

29 C.F.R. §§ 541.115-116 .................................................................................................5

29 C.F.R. § 541.207(a) .....................................................................................................12

29 C.F.R. § 541.703 ..........................................................................................................23

OTHER AUTHORITY

IWC Wage Order 7-2001(1)(A)(1) .................................................................5, 6, 8, 10, 11, 24

ii

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;
CASE NO. 3:14-CV-04781-RS

18762195v.7

## NOTICE OF MOTION AND MOTION

NOTICE IS HEREBY GIVEN that on April 2, 2015 at 1:30 a.m. in Courtroom 3 of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant NIKE Retail Services, Inc. ("Defendant" or "Nike") will and hereby does move this Court for an order under Federal Rule of Civil Procedure 56 granting summary judgment or, in the alternative, partial summary judgment, in its favor and against Plaintiff Payal Patel ("Plaintiff" or "Patel").

## RELIEF SOUGHT

This motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure and Northern District Local Rule 56 on the grounds that there is no genuine issue as to any material fact and Defendant is entitled to summary judgment as a matter of law as to the following claims:

1.      Plaintiff's first cause of action for "Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, et seq." fails, as a matter of law, because it is undisputed that Plaintiff meets all of the elements of the executive exemption under California Industrial Welfare Commission Wage Order 7-2001, and therefore, there is no underlying unlawful practice to support a claim for violation of the statute.

2.      Plaintiff's second cause of action for "Failure to Pay Overtime Compensation in Violation of Cal. Lab. Code §§ 510, 1194 and 1198, et seq." fails, as a matter of law, because it is undisputed that Plaintiff meets all of the elements of the executive exemption under California Industrial Welfare Commission Wage Order 7-2001, and therefore, is not entitled to overtime pay.

3.      Plaintiff's third cause of action for "Failure to Provide Accurate Itemized Statements In Violation of Cal. Lab. Code§ 226" fails, as a matter of law, because it is undisputed that Plaintiff meets all of the elements of the executive exemption under California Industrial Welfare Commission Wage Order 7-2001, and therefore, received compliant wage statements.

4.      Plaintiff's fourth cause of action for "Failure to Provide Wages When Due In Violation of Cal. Lab. Code §§ 201, 202 and 203" fails, as a matter of law, because it is undisputed that Plaintiff meets all of the elements of the executive exemption under California Industrial Welfare Commission Wage Order 7-2001, and therefore, timely received all final wages.

1
NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

18762195v.7

1      5.     Plaintiff's fifth cause of action for "Violation of The Private Attorneys General Act [Labor Code §§ 2698, et seq.]" fails, as a matter of law, because it is undisputed that Plaintiff meets all of the elements of the executive exemption under California Industrial Welfare Commission Wage Order 7-2001, and therefore, was timely paid all wages during employment and was not an aggrieved employee.

This Motion is based upon this Notice of Motion and Motion and Memorandum of Points and Authorities; the accompanying Declaration of Casey J.T. McCoy, and the exhibits attached thereto (which contain the deposition transcript pages and exhibits referenced in this Motion); all pleadings and papers on file in this action; and any such further matters or material, evidence, papers, or argument that may be presented at or before the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Payal Patel ("Plaintiff") has sued her former employer, NIKE Retail Services, Inc. ("Defendant"), alleging she was "misclassified" as a salaried exempt employee, and thereby denied all of the wage-related protections that apply to hourly "non-exempt" workers. However, all five of Plaintiff's causes of action fail because Plaintiff meets all of the requirements of the "executive exemption" under California Wage Order 7-2001.

As Plaintiff admitted, she "managed the day to day operations of a high revenue earning corporation," while working as the Assistant Store Manager of a large Nike Clearance Store. This required Plaintiff to spend the majority of her time to "plan the work of employees," "supervise employees and set individual goals," "coach staff," "support development" and "provide significant input into hiring decisions, performance management recognition and rewards." In performing these duties, Plaintiff was responsible for directing the work of as many as 180 employees.

As discussed below, all of these facts are undisputed. Thus, Plaintiff was an exempt executive employee, as a matter of law.

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

18762195v.7

II.   **STATEMENT OF ISSUES TO BE DECIDED**

The relevant issue to be decided is whether Plaintiff meets all of the elements of the executive exemption under California Industrial Welfare Commission Wage Order 7-2001, codified at 8 Cal. Code Regs. § 11070.

III.   **BACKGROUND FACTS**

No fact is disputed.  Indeed, each fact in this motion relating to the work Plaintiff performed is taken directly from Plaintiff's own sworn deposition testimony, or exhibits she authenticated under oath. Thus, there can be no tenable contention that any triable issue exists.

Defendant operates various types of retail stores in California:  Nike Clearance Stores, Niketown Stores, Nike Running Stores, and Nike Women's Stores, among others.  (Patel Dep., 21:18-22:1.) [1] Plaintiff worked at a Nike Clearance Store in San Leandro, California.  (Patel Dep., 21:15-17; 75:12-16.) From 2010 to 2013, Plaintiff worked as the Assistant Store Manager, known as the "Assistant Head Coach," at one of Defendant's clearance stores.  (Patel Dep., 17:16-23.) [2]  Plaintiff testified she was "part of the management team that resulted in the store being ranked No. 1 in satisfaction among clients on the West Coast."  (Patel Dep., 77:12-16.)

Plaintiff testified that when she first started, she worked as the "Assistant Head Coach of Consumer Experience" responsible for the "Front End" or "Front of House."  (Patel Dep., 80:16-25.) She explained that the San Leandro store was a new location for Defendant and that she was brought to the store as a resource to help train managers to help them "drive the consumer experience" because she had "a lot of experience with Nike's consumer experience programs over the years."  (Patel Dep., 82:15-83:4.)

After the San Leandro store had been open for a while, sometime in 2012, Plaintiff moved departments and became responsible for the Men's Footwear Department.  (Patel Dep., 26:12-14,

---

[1] Citations to Plaintiff's deposition transcript are referenced as ("Patel Dep., [page]:[lines])."  Exhibits to Plaintiff's deposition transcript are referenced as "(Patel Dep., Exh. [number], [page])."  The deposition testimony excerpts and exhibits cited herein are attached to the Declaration of Casey J.T. McCoy.
[2] In Defendant's terminology an Assistant Head Coach is an assistant manager is second in command at a particular location.  (Patel Dep., 20:7-9.)  The highest ranking manager is referred to as the Head Coach.  (Patel Dep., 19:18-21.)

176:16-19.)  Although her title and department changed, she described the change as a lateral move into another Assistant Head Coach position.  (Patel Dep., 205:15-19.)  In both roles, as the Assistant Head Coach, Plaintiff was "second in command at the stores."  (Patel Dep., 20:7-9.)

As Plaintiff admitted, she performed a variety of management responsibilities as the Assistant Head Coach, as follows:

- Managed 179 employees and successfully promoted five managers to roles of higher responsibility under my direct supervision.

- Trained staff and developed and promoted employee goals, and provided on going coaching through direct feedback.

- Increased employee satisfaction and performance by introducing FISH! Culture into the environment.

- Managed the day to day operation of a high revenue earning corporation.

- Responsible for scheduling staff to meet business demands.

- Created and implemented training programs for all current and new hire employees and trained instructors to execute training programs.

- Planned logistics for classroom training, community outreach, and hiring on an ongoing basis.

- Monitored daily, monthly, quarterly, yearly financial goals and led team to exceeding all goals, earning store recognition in district and store concepts for two years for meeting over 100% of goals

- Created a customer service culture in store that led to top rank #1 in customer satisfaction out of 126 stores on the West Coast

(Patel Dep., Exh. 1.)  Plaintiff further admitted that she performed additional duties regarding hiring and performance monitoring of employees while working as an Assistant Head Coach, as follows:

- Facilitated recruitment and hiring at a major corporation to ensure quality staff and low turnover for entry level and management positions.

- Orchestrated job fairs and performed individual and group interviews.

- Administrated payroll weekly to ensure employees were correctly compensated in a timely manner.

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

18762195v.7

- Conducted regular group and individual touch bases to monitor performance, assess needs, provide support and plan goals.

(Patel Dep., Ex. 1.)[3]

## IV.    LEGAL ARGUMENTS AND AUTHORITIES

### A.    Plaintiff Meets All Of The Elements Of The Executive Exemption

California law provides that an employee may be considered exempt from certain requirements that apply to hourly workers if the employee meets the standards for the "administrative, executive or professional capacities" set forth in an applicable "wage order" issued by the California Industrial Welfare Commission. *See, e.g.*, *Sav-On Drug Stores, Inc. v. Sup. Ct.,* 34 Cal. 4th 319, 324-325 (2004).

California Wage Order No. 7-2001 sets forth the standard for determining exempt status for employees in the mercantile industry.  Pursuant to the executive exemption, Wage Order No. 7-2001(1)(A)(1) states that an exempt executive or supervisory employee is someone:

(a) Whose duties and responsibilities **involve the management ... of a customarily recognized department or subdivision** thereof;

(b) Who customarily and regularly **directs the work of two or more other employees** herein;

(c) Who has the authority to hire or fire other employees or **whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight**;

(d) Who customarily and regularly **exercises discretion and independent judgment**;

(e) **Who is primarily engaged in duties that meet the test of the exemption**.  The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in ... 29 C.F.R. Sections 541.102, 541.104-541.111, and 541.115-116; and

(f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment.

---

[3] These job duties were listed on Plaintiff's resume, referring to her work as an Assistant Head Coach with Defendant.  (Patel Dep., Ex. 1, p.1.)  Plaintiff testified that the information in her resume was truthful and that she performed all of the duties listed on her resume while working for Defendant.  (Patel Dep., 31:15-17; 55:23-56:3.)  Statements contained on a resume are deemed to be admissions of fact constituting "substantial evidence" regarding an employee's job duties.  *See, e.g., Combs v. Skyriver Communications, Inc.,* 159 Cal. App. 4th 1242, 1264 (2008) (in holding that "substantial evidence" supported the employee's exempt status, the first piece of evidence the Court discussed was the plaintiff's resume); *Wilbur v. Silgan Containers Corp.*, 2008 WL 3863700 at *6 (E.D. Cal. Aug. 19, 2008) (based on plaintiff's resume, the court held that "plaintiff's own statements underscore the managerial nature of the production supervisor position").

5

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

18762195v.7

IWC Wage Order 7-2001(1)(A)(1), codified at 8 Cal. Code Regs., § 11070 (emphasis added).[4]  If an employee is properly classified as exempt, the employee is not subject to the requirements for overtime pay, meal and rest periods, itemized wage statements, or other provisions pertaining only to hourly employees.  *See, e.g., Wilbur*, 2008 WL 3863700 at *12 (granting summary judgment for the employer; holding that exempt supervisory employees are not subject to the provisions for overtime pay, meal and rest periods or itemized wage statements because such provisions "shall not apply to persons employed in ... executive ... capacities").

### B.  Plaintiff Managed A Customarily Recognized Department or Subdivision Within Defendant's Retail Operations

Under the executive exemption, "when an enterprise has more than one establishment, the employee in charge of each establishment may be considered in charge of a recognized subdivision of the enterprise."  29 C.F.R. § 103(b) (2001).  Management of a customarily recognized department or subdivision may also include supervision of a unit with a separate and distinct function.  Wage Order No. 7-2001(1)(A)(1)(a).[5]

As Plaintiff testified, she was "**part of the management team** that resulted in the store being ranked No. 1 in satisfaction among clients on the West Coast."[6]  (Patel Dep., 77:12-16.)  During her entire employment, Plaintiff concedes she was "responsible for a particular department or part of the store" and was "always responsible for managing one or more departments."  (Patel Dep., 176:20-23; 58:8-10.)  As Plaintiff explained, she was responsible for making sure that her department met its daily, monthly, quarterly or yearly financial goals:

---

[4] As stated in Wage Order No. 7-2001(1)(A)(1)(e), the duties that constitute exempt work "shall be construed in the same manner" as construed in the applicable federal regulations, 29 C.F.R. §§ 541.102 and 541.104.  *Accord Mendoza v. PetSmart, Inc.*, 2012 WL 9506073 at *2 (C.D. Cal., June 14, 2012) ("The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. sections 541.102, 541.104-111 and 541.115-116.").

[5] *See, e.g., In re United Parcel Serv. Wage and Hour Cases*, 190 Cal. App. 4th 1001,1017 (2010) (holding that the supervisor of the "Day Sort Operation" was exempt where the employer recognized that the unit was performing a separate function within the overall operation.)

[6] Plaintiff's own recognition that she was "part of the management team" demonstrates that she was exempt.  *See, e.g., Wilbur*, 2008 WL 3863700 at *6 ("Plaintiff's own statements underscore the managerial nature of the production supervisor position; **Plaintiff described himself as a 'member of [the company's] management'**").

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

18762195v.7

Q.   And you were responsible for making sure that your department met those daily, monthly, quarterly or yearly financial goals, right?

A.   Yes.

(Patel Dep., 48:22-25.)  In sum, Plaintiff admitted that she was responsible for all of the "day-to-day operations of everything that happened in [her] department."  (Patel Dep., Exh. 1; 50:22-25.)

At various times, Plaintiff further was responsible for the following distinct departments or sub-departments:  "registers, the apparel section and the footwear section." (Patel Dep., 79:25-80:15.)  These sub-departments are separate from the "back of the house," which included the "stockroom, the shipping, the receiving, the backroom operations."  (Patel Dep., 80:21-25.)

In addition to her duties to supervise a particular sub-department, at times Plaintiff was the only member of management on a shift and was responsible for supervision of the **entire** store.  As Plaintiff admitted, there was no Head Coach at the store for approximately half of her shift:

Q.   ... when there was no head coach in the store for about half the day, the highest-ranking managers in the store were the assistant head coaches, right?

A.   Right.

(Patel Dep., 61:8-12; *see also* 60:2-7.)[7]

## C.   Plaintiff Directed The Work Of Two Or More Employees

It is also undisputed that Plaintiff supervised at least two or more employees.  Although the number of employees varied, Plaintiff testified that **she always supervised at least four or five employees**.  (Patel Dep., 28:24-29:3, 81:9-22.)[8]  As Plaintiff testified, she eventually "**supervised a**

---

[7] *See, e.g., Wilbur,* 2008 WL 3863700 at *8 (noting that in determining whether a plaintiff was in charge of a recognized department or subdivision, "[t]his Court is persuaded by the fact that Plaintiff, when working the night shift, was frequently the only supervisor on duty at the Sacramento plant ….  These facts also demonstrate Plaintiff's 'relative freedom from direct supervision.'").

[8] The fact that Plaintiff supervised different numbers of employees on different days is consistent with exempt status.  Employees do not have to be permanently assigned to a particular supervisor but may be taken from a pool of workers. *See* California Labor Commissioner, Division of Labor Standards Enforcement ("DLSE"), *DLSE Enforcement Policies and Interpretation Manual*, § 53.3.2 ("An employee … will not lose the exemption simply because he or she draws the workers under his or her control from a pool.  The important consideration is that the employee is 'in charge' of the operation of the unit or department with a continuing function.").

7

1  **staff of 180 employees, including 40 direct reports and up to four managers**." (Patel Dep., 75:17-

2  20; 213:21-25; *see also* 32:6-7.)[9]

3      As Assistant Head Coach, Plaintiff managed the sales personnel or "athletes" she supervised to

4  meet the goals of her department.

5          Q.  You were responsible for making sure that the athletes that reported to you met
            the goals for the department on a daily basis, on a monthly basis or on a yearly
6          basis, right?

7          A.  Yes.

8  (Patel Dep., 49:6-10.) Plaintiff further testified that she and all managers were responsible for "making

9  sure that employees complied with California law." (Patel Dep., 36:13-16.) Plaintiff also "administered

10 payroll weekly to ensure employees were correctly compensated in a timely manner." (Patel Dep., Exh.

11 1.) Plaintiff also was responsible for "making sure that the employees in the department adhere to the

12 [work] schedule." (Patel Dep., 98:7-10.) Plaintiff also was responsible for "making sure that the

13 employees who reported to [her] had meal periods" and she was responsible for "making sure that the

14 employees who reported to [her] had rest periods. (Patel Dep., 35:6-11.)[10]

15     **D.    Plaintiff Made Suggestions And Recommendations As To The Hiring, Discipline,
            And Firing Of Employees, As Well As To Promotions And Other Changes In Status,**
16         **That Were Given Particular Weight**

17     Under the executive exemption, an exempt employee merely needs to make **"suggestions and**

18 **recommendations** as to the hiring or firing and as to the advancement and promotion or any other

19 change of status of other employees, [which] will be **given particular weight**." Wage Order No. 7-

20 2001(1)(A)(1)(c).[11] This element of the executive exemption is disjunctive—it is satisfied if an

21 employee is engaged in **either** hiring **or** firing, **either** by direct action **or** by making recommendations.[12]

22 _____

23 [9] As Plaintiff testified, she had other managers who reported directly to her, as well as non-managers who reported directly to her. (Patel Dep., 34:1-8.)

24 [10] Plaintiff's duties of monitoring and ensuring legal compliance -- such as payroll and meal or rest period compliance under the California Labor Code -- constitute exempt work. 29 C.F.R. § 541.102
25 (management duties include "monitoring or implementing legal compliance measures").

   [11] *See* 29 C.F.R. 541.105 ("an employee's suggestions and recommendation may still be deemed to have
26 'particular weight' even if a higher level manager's recommendation has more importance and even if
the employee does not have authority to make the ultimate decision as to the employee's change in
27 status."). *Accord Wilbur*, 2008 WL 3863700, at *9 (in determining that plaintiff employee was exempt,
the court found that while plaintiff "did not have power to hire or fire employees unilaterally, it is
28 undisputed that Defendant [employer] relied on Plaintiff's suggestions and recommendations in deciding

8

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;
CASE NO. 3:14-CV-04781-RS

18762195v.7

### 1. Plaintiff Made Decisions or Recommendations For Hiring Of Employees That Were Given Particular Weight

Plaintiff "interviewed employees for jobs at [her] store." (Patel Dep., 51:8-10.) As Plaintiff explained, "based on [my] interviews, [I] made recommendations as to which employees should be hired and which employees should be rejected." (Patel Dep., 51:11-14.) This required Plaintiff to assess the qualifications of the candidates interviewed. (Patel Dep., 53:6-10.)

Plaintiff's performance evaluations further documented Nike's expectation that "**hiring good talent is a priority for [Plaintiff]**," and commended Plaintiff for "**taking on control of the hiring process**" and recognized she had "elevated our selection process." (Patel Dep., Exh. 22; 198:6-16, 198:23-199:1; 199:2-16; emphasis added.) Given that Plaintiff had the specific job duty to make recommendations and hiring decisions, her decisions were given "particular weight," and Plaintiff was performing exempt managerial work.[13]

### 2. Plaintiff Made Decisions Or Recommendations For Firing Employees That Were Given Particular Weight

Plaintiff admitted that she was asked to provide recommendations or feedback in virtually all decisions regarding discipline or termination -- "I was asked to provide my feedback as to what I thought, but again we're not even just talking about just termination. I'm talking about any type of corrective action, whether it was—a write-up or a recommendation for termination. I made [the] recommendation." (Patel Dep., 38:17-23.)

---

whether to hire, fire, advance, and promote employees under [Plaintiff's] supervision"); *Leatherbury v. C&H Sugar Co., Inc.*, 911 F. Supp. 2d 872, 884 (N.D. Cal. 2012) (holding that the executive exemption applied, even though the plaintiff himself never recommended that any employee be hired or fired, where the plaintiff's managers testified that it was "the practice ... for Warehouse Supervisors to participate in the interview process, and their opinion about the hiring and firing of an employee was given a 'great deal of deference'").

[12] *See, e.g., Akaosugi v. Benihana Nat'l Corp.*, 2012 WL 3999855 at *4 (N.D. Cal., Sept. 7, 2012) ("the employee must be 'directly concerned **either with** the firing **or** the hiring and other change in status of the employees under his supervision, whether by direct action or by recommendation to those to [whom] the hiring and firing functions are delegated; "an executive who does not himself hire or fire employees may still be considered exempt if his hiring or firing recommendations are given serious consideration") (citing 29 C.F.R. § 541.105) (emphasis added).

[13] *See* 29 C.F.R. § 541.105 (factors to be considered in determining whether an employee's recommendations are given "particular weight" includes "whether it is part of the employee's job duties to make such suggestions and recommendations").

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

18762195v.7

1    Plaintiff further explained that her store manager asked her to provide her reasoning and

2    judgment for her recommendations.  (Patel Dep., 42:12-15.)  Plaintiff's recommendations were reviewed

3    by her store manager or employee relations to determine whether an employee should be terminated.

4    (Patel Dep., 38:17-39:4; 182:20-183:6.)  Although Plaintiff did not have the ultimate authority on every

5    occasion, unilateral authority to make personnel-related decisions is not needed to show exempt status.

6    To qualify as an exempt executive employee, a manger merely needs to make "**suggestions and**

7    **recommendations** as to the hiring or firing and as to the advancement and promotion or any other

8    change of status of other employees, [which] will be given particular weight."  IWC Wage Order No. 7-

9    2001(1)(A)(1)(c); emphasis added.[14]

10        **3.    Plaintiff Made Decisions Or Recommendations For Promotions,
          Advancement, Discipline Or Other Changes in Status That Were Given
11        Particular Weight**

12    Under the executive exemption, relevant recommendations are not limited to hiring and firing—

13    an exempt employee also may be deemed exempt because he or she made suggestions related to "the

14    advancement and promotion or any other change in status of other employees."  Wage Order No. 7-2001

15    (1)(A)(1)(c).[15]

16    Here, Plaintiff admitted she was part of the process that "**successfully promoted five managers**."

17    (Patel Dep., 32:8-10; 21-24; emphasis added; *see also* Patel Dep. Exh. 1.)  Plaintiff explained that the

18    ---
[14] *Accord*, 29 C.F.R. 541.105 ("an employee's suggestions and recommendation may still be deemed to
19    have 'particular weight' even if a higher level manager's recommendation has more importance and
      even if the employee does not have authority to make the ultimate decision as to the employee's change
20    in status."); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1116-1117 (9th Cir. 2001) (holding that the
      employees qualified for the executive exemption even though they did not have ultimate authority to
21    hire and fire because they "were responsible for training the assistant managers, ensuring their
      compliance with policies and procedures, ensuring their compliance with policies and procedures, and
22    reporting their hours worked … [and] recommended firing assistant managers in one instance);
      *Whiteway v. Fedex Kinko's Office and Print Serv., Inc.*, 2007 WL 2408872, *6 (N.D. Cal. Aug. 21,
23    2007) (in holding that employees qualified for the executive exemption, the Court observed that "neither
      the state nor the federal regulations declare that the purported executive must have sole authority to fire,
24    only that the employee's suggestions and recommendations must be given particular weight …."),
      *reversed and remanded on other grounds*; *see also DLSE Enforcement Policies and Interpretation
25    Manual*, § 53.5.1 ("The right to take action involving the status of the employees under his or her
      supervision need not be direct nor must it be final.  The manager's actions in this regard may be
26    exercised through those who actually perform those functions; but the recommendation of the manager
      in such decisions must carry particular weight.").
27    [15] *See, e.g., Wilbur*, 2008 WL 3863700 at *10 (holding that a supervisor was exempt, because he "made
      recommendations as to whether individuals hired for skilled positions should advance from 'trainee' to
28    'non-trainee' status").

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;
CASE NO. 3:14-CV-04781-RS

18762195v.7

"assistant head coaches and then the head coach [came] together" and met for the purpose of deciding who to promote or hire, and that she "provided feedback to [the] head coach." (Patel Dep., 193:12-21.) Plaintiff's feedback was solicited because she was "responsible for training employees to develop into higher-level positions at the company, including management positions." (Patel Dep., 33:10-14; 34:9-13.) As Plaintiff admitted, she was always responsible for the training and development of non-managerial employees and assessing their qualifications for promotion. (Patel Dep., 33:15-25; 34:1-13; 53:6-14.)[16]

Plaintiff also was responsible for "writing and delivering corrective actions" for employees at her store. (Patel Dep., Exh. 5; 99:5-12; 109:8-12.) As Plaintiff explained, "[t]he way the store operated was, there was a management team that got together and collaborated to discuss coaching or disciplinary issues." (Patel Dep., 45:17-23.) As part of that "management team," Plaintiff "was asked to provide feedback … about any type of corrective action" and would make "recommendations as to what level of discipline or what type of coaching [employees] should receive." (Patel Dep., 37:12-15; 38:17-39:4.) After collaboration with the "management team," Plaintiff was responsible for completing and delivering "a written document with feedback from the entire management staff to an employee." (Patel Dep., 40:10-22.)[17]

Even if Plaintiff was not the ultimate decision maker as to which employees would be promoted and whether discipline would be issued, she was part of the process of promoting employees and managing their performance. Being "part of the process of promoting and discharging employees" is sufficient to meet this requirement of the exemption.[18]

---

[16] That Plaintiff's recommendations were solicited and part of her job duties is evidence that her recommendations were to be given "particular weight." *See* 29 C.F.R. § 541.105 (a recommendation has "particular weight" if it is "part of the employee's job duties to make such suggestions and recommendations").

[17] Providing discipline to employees is an exempt managerial duty. *See* 29 C.F.R. § 541.102 (exempt management duties include "appraising employees' productivity and efficiency" and "disciplining employees").

[18] *See, e.g., Taylor,* 190 Cal. App. 4th at 1023 (finding that standardized internal personnel policies for progressive discipline "does not mean that the employer does not consider the supervisor's recommendations to be of substantial importance.").

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

18762195v.7

### E.  Plaintiff Regularly Exercised Discretion And Independent Judgment

To be exempt, an employee must "customarily and regularly exercise[] discretion and independent judgment."  8 Cal. Code Regs., § 11070(1)(A)(1)(d) (2011).  However, the level of independent judgment and discretion required for exempt status does not have to involve highly complex issues.[19]  Even if a supervisor is required to follow standardized procedures or budgets, a supervisor may still exercise independent judgment and discretion when acting within prescribed procedures.  *See, e.g.*, *Guiltoyle v. Dollar Tree Stores, Inc.*, 2014 WL 66740 at *4 (E.D. Cal., Jan. 8, 2014) ("Where government regulations or internal company policies and procedures simply **channel** the exercise of discretion and independent judgment, as opposed to **eliminating** it completely or otherwise constraining it to a degree where any discretion is largely inconsequential, the executive exemption may still apply") (citing *In re United Parcel Serv. Wage & Hour Cases*, 190 Cal. App. 4th 1001, 1026 (2010)); *Akaosugi*, 2012 WL 3999855 at *5 ("Courts have recognized that modern companies often implement policies aimed at standardizing procedures and services, but the exercise of discretion 'even when circumscribed by prior instruction' is still required and critical to the success of the enterprise;" "although plaintiffs may not have influenced or created certain policies, such as labor budgets, this does not refute that they regularly exercised discretion and independent judgment").

As shown above, Plaintiff regularly used discretion and independent judgment to make recommendations for hiring and firing of employees.  Plaintiff also used her discretion and judgment in a variety of other areas, as described below.

#### 1.  Plaintiff's Work Required Her To Prioritize Issues, Problem Solve and Make Decisions About Work Flow

As Plaintiff testified, she was required to prioritize her own work based on the evolving business needs of the day.  (Patel Dep., 230:21-25.)  As Plaintiff explained, she was "**constantly prioritizing** ... as to what needed to be taken care of immediately and what could be take care of later ... to ensure the business was running smoothly."  (Patel Dep., 157:10-19.)  Plaintiff admitted that she "had to prioritize

---

[19] *See e.g.*, *Nordquist v. McGraw Hill Broadcasting Co.*, 32 Cal. App. 4th 555, 572 (1995) (discretion and independent judgment is defined merely as "the comparison and evaluation of possible courses of conduct and acting or making a decision after various possibilities have been considered"); *see also* 29 C.F.R. § 541.207(a) (same).

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

18762195v.7

the various functions of observing employees, the "Bring Nike to Life" observations, the Performance Action Record observations, the training, the merchandising and customer service and the supervision." (Patel Dep., 231:15-21.)[20]

Plaintiff further admitted her job responsibilities required her to "make recommendations for the best business plan for [her] department." (Patel Dep., 173:21-24.)  Because the needs of the business constantly changed, Plaintiff had to react to these changes by making decisions based on her analysis of how well the store was performing.  For example, Plaintiff had to constantly make decisions regarding the control and flow of merchandise:

> Q. So based on the level of business activity, **there would be a constantly changing decision-making** about whether to bring out more stock or whether to keep stock back in the stockroom.
>
> A. Yes. We had to manage the product flow based off of sell-through and inventory levels.

(Patel Dep., 166:22-167:2; emphasis added.)[21]  Plaintiff's decisions for ensuring that the department had the appropriate product flow out to the floor and her feedback as to how the "set up" should look in order to merchandise the product directly affects sales and customer satisfaction.  (Patel Dep., 79:25-80:13; 84:15-19; 85:13-17.)

Plaintiff also explained that she would decide whether to allocate additional labor during the shift based on changing business needs:

---

[20] As Plaintiff explained, "Bring Nike to Life" or "BTNL" observations were how she "evaluated the performance of our athletes in terms of how they executed premium customer service." (Patel Dep., 193:22-194:3.)  During these "Bring Nike to Life" observations, Plaintiff would provide "written observations to the athlete" on whether they met Defendant's expectations for customer service in the categories of "greet, engage, sell and thank."  (Patel Dep., 194:9-17.)

The Performance Action Record or "PAR" observations were a more formal "coaching" and performance tool for managing employee performance.  (Patel Dep. 107:13-108:10.)  As Plaintiff explained, her Performance Action Record or "PAR" observations were used "to document observations and behaviors for all team members within the store as a legal HR document to manage performance." (Patel Dep., 99:21-25.)  These observations could impact the employees performance rating, including whether the employee should be terminated or suspended.  (Patel Dep., 101:2-12; 137:13-16.)

[21] For example, Plaintiff made the decision to withhold product until after "friends and family" events had ended, because it was thought that the product could subsequently sell at full retail price.  (Patel Dep., 171:5-172:7.)  As Plaintiff explained, she evaluated the business reason for withholding the product and determined it was sound and that the store had "plenty of other product flow out to the floor."  (Patel Dep., 171:15-21.)

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

1

2

> Q. So, based on business needs, you decided that additional hours were needed by the hourly employees, right?
>
> A. Yes.
>
> Q. Okay.  And that was decision making you made during the shift, right?
>
> A. Yes.
>
> Q. And you also commented on the staffing levels and whether the staffing levels allowed you to accomplish the work objections for the day, right?
>
> A. Yes.

(Patel Dep., 180:23-181:8; *see also* 186:18-21; 46:12-24.)[22]  As part of the management team, Plaintiff would make these decisions based on her analysis of business trends and forecasts.  (Patel Dep., 46:25-47:14; 48:3-6.)  As Plaintiff elaborated, she was "[r]esponsible for scheduling staff to meet business demands" and "[p]rovided insight of consumer marketplace and consumer trends to improve business." (Patel Dep., Exh. 1; 31:10-17; 55:23-56:3.)

Given that Plaintiff made decisions and used her judgment to adjust to changing business needs and problem solve, she was performing exempt work.  *See, e.g.*, *Williamson v. Cook Composites and Polymers Co.*, 2009 WL 4730887, at *7 (C.D. Cal. Dec. 7, 2009) (plaintiff's admissions that his schedule would change throughout the day based on business needs and that he had the responsibility to adjust assignments to meet deadlines "firmly establish the extent to which [the plaintiff] customarily and regularly exercised discretion and independent judgment").  *Accord Wilbur*, 2008 WL 3863700 at *11 (finding that a supervisor "had to exercise discretion and independent judgment every time a new situation arose"); *see also Leatherbury*, 911 F. Supp. 2d at 883 (holding that a warehouse supervisor was exempt where he had discretion about "how to troubleshoot various issues that arose").[23]

---

[22] The activities of allocating merchandise and labor are considered exempt managerial duties. *See* 29 C.F.R. 541.102 (management duties include "controlling the flow and distribution of materials or merchandise and supplies" and "apportioning the work among the employees").

[23] Additionally, the listing of high-level job responsibilities in Plaintiff's resume is evidence that she customarily and regularly exercised discretion and independent judgment with respect to matters of significance.  *See, e.g., Combs,* 159 Cal. App. 4th at 1267 (finding "the many high-level job responsibilities listed in [the plaintiff's] resume also supported a finding that he customarily and regularly exercised discretion and independent judgment with respect to matters of significance.")

14

### 2.   Plaintiff's Work Required Her To Make Decisions About Coaching, Training and Developing Employees

Plaintiff also used her judgment and experience to manage employees.  In order to manage employee performance, Plaintiff had to decide whether to give coaching, provide additional training to employees or "congratulate somebody."  (Patel Dep., 107:6-9.)  As Plaintiff explained, she "had to observe all of those different types of employees and determine is this somebody who could benefit from more coaching, or is this somebody who needs more feedback."  (Patel Dep., 44:9-13.)  As part of that observation, Plaintiff also "had to decide which employees needed more training and which employees needed less training."  (Patel Dep., 44:20-23.)

For employees who needed additional training, Plaintiff testified that she "**created and implemented [the] training programs on her own**."  (Patel Dep., Exh. 1; 48:10-13; emphasis added.)  As Plaintiff testified she was routinely called upon to train employees throughout her employment because of her "training and development expertise."  (Patel Dep., 189:25-190:7.)

Plaintiff also used her judgment and initiative to develop tools for her employees to be more productive, such as implementing a policy to provide individual business cards to all sales associates or "athletes" at her store:

> Q. ... you came up you came up with this idea to empower the athletes at the store. You made the recommendation to let them have business cards that could be given to customers, and that recommendation was approved for all athletes throughout the store.
>
> A. Yes.

(Patel Dep., 79:12-17.)[24]  Indeed, in Plaintiff's performance evaluation, she was recognized as having "found exciting ways to deliver praise and recognition to the team."  (Patel Dep., Exh. 22; 198:6-12.)

Plaintiff also used her discretion and independent judgment to evaluate and rate employees in connection with their performance evaluations.  As Plaintiff testified, she prepared and delivered performance evaluations for all employees that reported to her.  (Patel Dep., 135:20-23; 140:1-7.)  This

---

[24] As Plaintiff testified, at times she supervised a staff of 180 employees. (Patel Dep., 75:17-20.)  Thus, her idea to provide business cards to employees affected how numerous employees interacted with customers.  Specifically, it meant that Defendant could "tie [the employees] customer service back to each individual."  (Patel Dep., 78:24-79:2.)

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

18762195v.7

required Plaintiff to determine where each employee fell within a range of ratings from unsatisfactory to exceptional. (Patel. Dep., Exh. 7; 135:15-23; 136:4-15.)

As Plaintiff explained, it was her job to provide a suggested rating for the employees. (Patel 137:13-16; 139:21-25.) Plaintiff could decide to give all employees an exceptional rating or unsatisfactory rating, as "there wasn't any set rule or what percentage of employees had to have an exceptional rating or what percentage had to have an unsatisfactory rating." (Patel Dep., 137:23-138:2.) As Plaintiff further elaborated, she would go back and look at a person's counseling notices ("PAR" records) in order to "get a good assessment of the good performance and the bad performance throughout the year, and then [she] **would have to think about which rating to give each person in the 10 categories**." (Patel Dep., 139:17-25; emphasis added.) Plaintiff would then "determine the ... written comments or feedback to provide [on] an evaluation." (Patel Dep., 140: 1-4.)

Plaintiff's assessments were then discussed with all managers during a "calibration meeting" to "**ensure everyone's input was taken into consideration**." (*Id*.; emphasis added.) As Plaintiff explained, this was the process in place throughout the time she was Assistant Head Coach, "so that everybody's input would be **given particular weight** and then there would be a consensus." (Patel Dep., 136:25-137:6; emphasis added.)

Plaintiff's responsibilities for training, coaching and evaluating employees satisfy this element of the exemption. *See, e.g., Taylor,* 190 Cal. App. 4th at 1024-1025 (finding the following job duties, by their nature, require the exercise of discretion and judgment on matters of consequence: "training employees and appraising employee performance; imposing discipline on his own initiative, including having the authority to talk with an offending employee to attempt to correct the problem before proceeding through the progressive discipline system.")

Even if the ultimate decision differed from Plaintiff's decision or recommendation, discretion and independent judgment does not require a lack of supervision or final authority for a decision. *See, e.g., Whiteway*, 2007 WL 2408872 at *7 ("the decision may be in the form of a recommendation for action, subject to the final authority of a supervisor. Ergo, the existence of detailed policy manuals or subjection to the authority of District Managers fails to undercut the [plaintiffs'] exercise of discretion

and independent judgment").[25]  Discretion and independent judgment merely requires deciding between

alternative courses of action, which is exactly what Plaintiff was doing.  *See, e.g., Nordquist*, 32 Cal.

App. 4th at 572  (discretion and independent judgment is defined merely as "the comparison and

evaluation of possible courses of conduct and acting or making a decision after various possibilities have

been considered").

### F.    Plaintiff Was Primarily Engaged In Exempt Work

Under the executive exemption, the duties performed by Plaintiff were exempt "management

duties."  As a matter of law, exempt management duties include:

> [A]ctivities such as "interviewing, selecting, training of employees; setting and adjusting
> their rates of pay and hours of work; directing the work of employees; maintaining
> production or sales records for use in supervision or control; appraising employees'
> productivity and efficiency for the purpose of recommending promotions or other
> changes in status ... handling employee complaints and grievances ... planning the work;
> determining the techniques to be used; apportioning the work among the employees;
> determining the type of materials, supplies, machinery, equipment or tools to be used or
> merchandise to be bought, stocked and sold; controlling the flow and distribution of
> materials or merchandise and supplies; providing for the safety and security of the
> employees or the property; and planning and controlling the budget; and monitoring or
> implementing legal compliance measures.

29 C.F.R. §  541.102.[26]  Exempt duties also include duties that are "directly and closely related" to

managerial responsibilities, even if such duties also are performed by hourly employees.[27]

In order to determine whether an employee is primarily engaged in exempt duties, the court must

examine the amount of time the employee spends performing exempt work, "together with the

employer's realistic expectations and the realistic requirements of the job."  8 Cal. Code Regs.,

---

[25] To the extent Plaintiff ran her decisions by her supervisor, Plaintiff admitted that on average she never spent more than two hours  a day consulting with her Head Coach.  (Patel Dep., 69:18-70:1.)

[26] *Accord Mendoza v. PetSmart, Inc.*, 2012 WL 9506073 at *2 (C.D. Cal., June 14, 2012) ("The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. sections 541.102, 541.104-111 and 541.115-116.").

[27] *See, e.g., Wilbur*, 2008 WL 38663700 at *10 and *12 ("Even if Plaintiff performed some non-exempt tasks, he was still primarily engaged in exempt work;" under California law, supervisory or exempt duties also include non-exempt work that is "directly and closely related to exempt duties;" such "directly and closely related" non-exempt work very often overlaps with exempt supervisory work, so that a supervisor can better manage employees who exclusively perform warehouse jobs;" exempt duties "include all work 'directly and closely related to exempt work and work … properly viewed as a means for carrying out exempt functions'").

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;
CASE NO. 3:14-CV-04781-RS

18762195v.7

§ 11070(1)(A)(1)(e) (2011); *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 802 (2010).

### 1.   Plaintiff Was Responsible For Employee Performance And Ensuring Compliance With Rules and Policies At All Times Throughout Her Entire Shift

Although Plaintiff had supervisory responsibilities while managing different departments, she always spent the majority of her time performing exempt tasks.  As Plaintiff explained, she was responsible for the performance of athletes "**day-to-day throughout [her] shift**" "**throughout the time while [she was] assistant head coach.**"  (Patel Dep., 49:11-50:5; emphasis added.)

Plaintiff admitted she was expected to provide "**ongoing** coaching and feedback" to employees and that these "performance management duties were "something she did "**throughout [her] shift every day**."  (Patel Dep., 112:6-19; emphasis added.)  Plaintiff further admitted she was responsible for "making sure that employees complied with Nike rules and policies **from the time [she] entered the store [to] the time that [she] left the store.**"  (Patel Dep., 50:7-11; emphasis added.)  As Plaintiff testified, she was **always** responsible for observing the behavior of the employees on the sales floor in order to monitor their performance.  (Patel Dep., 113:1-6.)  Plainly put, Plaintiff was responsible for supervising employees **100% of the time** each workday.

Plaintiff further admitted her **primary tasks** are set forth in her job description.  (Patel Dep., 222:2-7.)  Each of the tasks listed constitutes an exempt activity:  "plans the work of employees with a daily or short term focus"; "supervises employees and sets individual goals"; "coaches staff, supports development and provides significant input into hiring decisions, performance management recognition and rewards"; "assist store manager by manager on or more of the store functions"; and "prepare[s] statistical and narrative reports of store activities"  (Patel Dep., Exh. 15.)

Plaintiff also prepared a resume (after she commended this litigation) detailing her "management" duties as an Assistant Head Coach with Defendant from November 2010-August 2013.  (Patel Dep., Exh. 1.)  Each of the job duties that Plaintiff listed on her resume also constitutes an exempt activity, such as Plaintiff's statements that she  "[t]rained staff and developed and promoted employee goals, and provided ongoing coaching through direct feedback."  (Patel Dep., Exh. 1.)[28]

---

[28] *See, e.g.,* 29 C.F.R. § 541.102 (exempt job duties include "interviewing, selecting, training of employees," "directing the work of employees," "maintaining production or sales records for use in

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

18762195v.7

Also, the fact that Plaintiff performed these managerial duties while responsible for a staff of up to 180 employees meant that she had to be primarily engaged in exempt work.  As Courts have recognized, "it is difficult for the Court to fathom how the operation of retail stores employing 60 to 100 employees could drastically improve while their most senior manager occupied himself by performing the tasks of the lowest-level employees."  *Musgraves v. Sears Holding Management Corporation*, 2012 WL 3222905 (C.D. Cal. July 19, 2013).

Through her hard work, Plaintiff boasted that she "increased employee satisfaction and performance" and "[c]reated a customer service culture in store that led to top rank #1 in customer satisfaction out of 126 stores on the West Coast."  (Patel Dep., Exh. 1.)  Plaintiff testified that this ranking was achieved in large part because she "helped roll out a program which allowed the athletes to really take ownership of the consumer experience process in the store and really help elevate it so that they take more pride in the job duties that they perform."  (Patel Dep., 77:21-79:24.)

### 2. Plaintiff Spent 80% Of Her Time On The Sales Floor Managing Employees And Store Operations

As a supervisor, Plaintiff explained she was expected to spend 80% of her time on the sales floor "executing".  (Patel Dep., 215:11-18.)  The work Plaintiff was "executing" constituted exempt management duties or duties that are "directly and closely related" to exempt work.

While on the sales floor for 80% of her day, Plaintiff was responsible for "observing the behavior of the employees in order to engage in [her] performance management activities" and praising and coaching employees.  (Patel Dep., 113:1-6; 230:9-16.)  Plaintiff explained that she used this time of **80% of her day** to "manage [her] own business" and conduct "Bring Nike to Life" observations, as well as other management duties such as:  "making sure product was meeting standards, completing your consumer experience leader functions, your manager on-duty job functions, your corrective actions, your Performance Activity Record Reviews and inputs, collection of data, so -- analyzing reports and communicating in a recap form."  (Patel Dep., 231:15-232:8.)

supervision or control," "planning the work," "apportioning the work among the employees," "controlling the flow and distribution of materials or merchandise and supplies," and "providing for the safety and security of the employees or the property" and "planning and controlling the budget").

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

18762195v.7

Plaintiff further elaborated that she was responsible for performing the "Consumer Experience Leader" functions, or "CEL" functions which required her to be "**constantly** in movement, **constantly** observing, providing coaching in the moment, feedback, praise, making sure that product was hitting the floor, and … that employees were executing their job duties." (Patel Dep., 122:9-12; 123:17-22; emphasis added.) Plaintiff also stated that she performed "Manager On-Duty" functions or "MOD" functions that included security responsibilities such as conducting "bag checks" as employees left the store. (Patel Dep., 122:9-12.)[29]

Plaintiff testified her hours of work varied throughout her employment as Assistant Head Coach, with 10-11 hours being the most time she worked in any given day. (Patel Dep., 150:18-20.) Based on her total shift time, on some days Plaintiff necessarily spent over 50% of her shift performing "CEL" and "MOD" duties alone (6 of 11 hours is 54.4%).

Although Plaintiff makes vague allegations that part of this time was also spent "assisting customers" and "putting product out to the floor," she concedes that "**most of the time** was spent out on the floor, **managing** the day-to-day operations of the department." (Patel Dep., 70:9-11, 18-20; emphasis added.) While managing the day-to-day operations of the department, Plaintiff concedes that at all times when she was on the sales floor she was responsible for observing the behavior of the employees in order to monitor their performance. (Patel Dep., 113:1-6.)[30]

---

[29] As Plaintiff testified, bag checks were done by managers "to investigate what [employees] were leaving out with ... to report it to our loss prevention." (Patel Dep., 115:3-8, 14-20.) Providing for the safety and security of property is a quintessential exempt task. 29 C.F.R. § 541.102 (identifying "**providing for the safety and security of the employees or the property**" is an exempt task).

[30] A supervisor's mere presence constitutes "supervision" of employees, even if the supervisor does not provide specific instructions to subordinates. Indeed, some of the most successful supervisors rarely monitor the work of other employees, but are still considered to be performing exempt-level work. *See, e.g., Mellas v. City of Puyallup*, 201 F.3d 444, 1999 WL 841240 at *2 (9th Cir. 1999) ("[Plaintiff] argues that he did not provide much actual, day-to-day supervision because his subordinates were competent, motivated employees who functioned well with minimal oversight …. Plaintiff's position would create the odd result that a manager with authority over a veteran crew of responsible employees who follow the rules and work independently would not be exempt, while a manager with identical authority over a group of less experienced employees who require constant attention would be exempt."); *Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982) (holding that managerial duties are still pertinent even if employees require very little direct supervision; "it is clear that the restaurants could not operate successfully unless the managerial functions … such as determining the amount of food to be prepared, … scheduling employees, keeping track of inventory, and assigning employees to particular jobs, were performed.").

20

18762195v.7

1    As Plaintiff admitted, it was her decision how to manage her time and it was her responsibility to

2    schedule staff to meet business demands.  (Patel Dep., 46:12-16; 230:15-20.)  Under such

3    circumstances, Plaintiff was performing exempt work while managing the day-to-day operations of the

4    department, even if her duties concurrently included activities such as "assisting customers" and

5    "putting product out to the floor."[31]   The "[c]oncurrent performance of exempt and nonexempt work

6    does not disqualify an employee from the executive exemption" because "exempt executives make the

7    decision regarding when to perform nonexempt duties and remain responsible for the success or failure

8    of business operations under their management while performing the non-exempt work."  29 C.F.R.

9    § 541.106(a).  *Accord Wilbur*, 2008 WL 38663700 at *10 and *12 ("Even if Plaintiff performed some

10   non-exempt tasks, he was still primarily engaged in exempt work;" under California law, supervisory or

11   exempt duties also include non-exempt work that is "directly and closely related to exempt duties;" such

12   "'directly and closely related' non-exempt work very often overlaps with exempt supervisory work, so

13   that a supervisor can better manage employees who exclusively perform warehouse jobs;" exempt duties

14   "include all work 'directly and closely related to exempt work and work … properly viewed as a means

15   for carrying out exempt functions'").  *See, also California Labor Commissioner, Division of Labor*

16   *Standards Enforcement ("DLSE") Opinion Letter*, dated July 6, 1993, at p.6 ("[D]uring that time [when

17   a supervisor is performing the same work as subordinates] it is also his job to consider such matters as

18   how he can cause his establishment to perform more efficiently and more profitably; how he can

19   motivate or otherwise assist his … service employees to perform their functions more efficiently, how

20   we can resolve any employee or other problems which have arisen; whether each of these employees is

21   doing his or her job in an adequate manner; how corrective action can be taken with regard to any such

22   employee who is not adequately performing; and whether his inventory is proper.  **Once again, this**

23   **employee is 'engaged in' work that is exempt**") (emphasis added).[32]

24   _____

     [31] As stated in the applicable regulations, exempt duties include "controlling the flow and distribution of

25   materials or merchandise and supplies."  29 C.F.R. § 541.102.

26   [32] Opinion letters issued by the DLSE may be relied upon when interpreting California Wage Orders.
     *See Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 958, 959 n.9 (9th Cir. 2013) ("The DLSE's

27   opinion letters, while not controlling upon the courts by reason of their authority, do constitute a body of
     experience and informed judgment to which courts and litigants may properly resort for guidance"; "the
     DLSE is the state agency empowered to enforce California's labor laws, including IWC Wage Orders").

28
                                                                     21
     NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY
         JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;
                                                  CASE NO. 3:14-CV-04781-RS

18762195v.7

### 3. Plaintiff Spent 20% Of Her Time On Office Work, Such As Documentation Of Performance Management, Planning, And Collaborating With The Management Team

In addition to spending 80% of her time managing employees and operations on the sales floor, Plaintiff testified that she spent the other 20% of her time in the office engaging in performance management, business planning, and collaborating with her store manager or business partners.  (Patel Dep., 70:7-9; 101:25-102:4; 103:3-7.)

As part of her performance management duties, Plaintiff testified she would spend time in the office "doing paperwork in connection with . . . Performance Activity Reports to evaluate employee performance."  (Patel Dep, 102:5-9.)  Plaintiff explained this required her to prepare "performance notes, observational notes, infractions of [her] athletes or any other athletes in the store."  (Patel Dep., 103:21-25.)  Plaintiff further elaborated that "[t]he expectation that we were given was, any conversations, whether positive or negative, in terms of whether we're providing feedback, should be noted in our Performance Activity Record."  (Patel Dep., 105:9-12.)  As Plaintiff testified, she was then responsible for reviewing the Performance Activity Record "in order to determine if somebody has a pattern of either good behaviors or bad behaviors and how to approach trying to improve behaviors or keep the good behaviors going."  (Patel Dep. 107:13-108:10.)  Given that Plaintiff was expected to provide "ongoing coaching and feedback," these duties required Plaintiff's constant attention every day. (Patel Dep. 112:15-19.)

Plaintiff testified that her performance management duties also required her to complete performance evaluations and deliver them to employees.  (Patel Dep. 108:11-16; 109:8-12.)  As Plaintiff explained, she would write the performance evaluations, have a meeting with the employee, and read the performance evaluation to the employee to provide direct feedback about their performance.  (Patel Dep. 108:17-24; 109:3-7.)  Plaintiff's tasks of maintaining paperwork for performance management and appraising employee work are precisely the types of responsibilities that are identified by the applicable regulations as exempt "management duties."[33]

---

[33] *See, e.g.,* 29 C.F.R. § 541.102 (exempt job duties include "appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status").

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS

Plaintiff spent the remainder of her office time "planning for [her] department," "communicating with partners to pull up your sales reports," "collaboration for hiring and firing decisions," and generally making sure "reports were completed and the office paperwork was completed for [her] department." (Patel Dep., 101:25-102:9; 102:14-19; 102:23-103:2.)  Planning the work and preparing reports to management or meeting with management are considered exempt duties.  29 C.F.R. § 541.102 (exempt job duties include  "planning the work" and "maintaining production or sales records for use in supervision or control.").  *Accord Friend v. Hertz Corp.*, 2014 WL 4415988 at *4 (N.D. Cal. Sept. 8, 2014) ("keeping basic records … when performed by a 'supervisor' of a department is considered exempt work under the executive exemption because it is 'directly related to the function of managing the particular department'"); *Heyen v. Safeway Inc.*, 216 Cal. App. 4th 795, 820 (2013) (same).[34]

Based on Plaintiff's admissions, during the 20% of her time spent in the office, Plaintiff also was engaged in exempt tasks.  Combined with the exempt duties Plaintiff testified to performing 80% of the time while on the sales floor, Defendant easily meets its burden to establish Plaintiff was primarily engaged in duties that meet the test of the exemption.

### G.    Plaintiff's Salary Is More Than Double California's Minimum Wage

To satisfy the "salary basis" requirement for exempt status, an employee must earn at least two times the state minimum wage.  Wage Order 7-2001(1)(A)(1)(f).  For Plaintiff to have earned double the minimum wage during the relevant period, she must have earned an annual salary of at least $33,280.[35] While Assistant Head Coach, Plaintiff's annual salary was between $56,000 and $60,335—significantly

---

[34] To the extent Plaintiff claims certain office work is "clerical," it is ancillary to Plaintiff's exempt tasks and does not destroy the exemption.  *See* 29 C.F.R. § 541.703(b)(6) (explaining an employee "may take extensive notes recording the flow of work and materials through the office or plant of the client; after returning to the office of the employer, the [employee] may personally use the computer to type a report ...[s]tanding alone, or separated from the primary duty, such note-taking and typing would be routine in nature. However, because this work is necessary for analyzing the data and making recommendations, the work is directly and closely related to exempt work."); *see also* 29 C.F.R. § 541.703(b) (explaining "directly and closely related" work may include physical tasks and menial tasks that arise out of exempt duties.); *Soderstedt v. CBIZ Southern California, LLC*, 197 Cal. App. 4th 133, 150 (2011) (affirming reliance on revised federal regulations issued after Wage Order was proper since regulations issued only "additional interpretative guidance" and "were not meant to effect any substantive change in the exemptions.").

[35] From January 1, 2008 to June 30, 2014, the minimum wage in California has been $8.00 per hour. $8.00 minimum wage x 40 hours per week x 52 weeks per year = $16,640 x 2 = $33,280.

---

23

more than double the minimum wage.  (Patel Dep. at 197:8-11, 15-25; 198:1-5.)[36]

      **H.**    **All Of Plaintiff's Derivative Claims Fail Because Plaintiff Was Properly Classified As An Exempt Employee**

Plaintiff's claims for "failure to provide accurate itemized statements," "failure to provide wages when due," "unfair competition in violation of Cal. Bus. & Prof. C. § 17200 *et seq*." and "violation of the private attorneys general act" are all derivative claims of her primary claim of misclassification. Because Plaintiff was properly classified as exempt, all of her causes of action fail, and summary judgment should be granted in favor of Defendant.  *See Taylor*, 190 Cal. App. 4th at 1013-14 (where the "gravamen of the complaint [is] based on the claimed misclassification of [the plaintiff] as exempt," a finding that the plaintiff "was properly classified as exempt [is] dispositive of the entire complaint").[37]

**V.**    **CONCLUSION**

For all the reasons stated above, summary judgment in favor of Defendant should be granted.

DATED: February 19, 2015

                    SEYFARTH SHAW LLP

                    By: /s/ Casey J.T. McCoy
                        Jon D. Meer
                        Sheryl L. Skibbe
                        Casey J.T. McCoy
                        Maya Harel
                    Attorneys for Defendant
                    NIKE RETAIL SERVICES, INC.

---

[36] By requiring that an exempt employee earn only twice the applicable minimum wage, the test of the exemption was not meant to apply only to high-level management or senior executives.  The Wage Order contemplates that an exempt employee can be a person who makes even $35,000, which is far less than what Plaintiff made in this case.  Indeed, based on a pay level at merely twice the minimum wage, junior level or mid-level managers qualify for exempt status.

[37] *Accord Wilbur*, 2008 WL 3863700 at *12 (granting summary judgment for the employer; holding that exempt supervisory employees are not subject to the provisions for overtime pay, meal and rest periods or itemized wage statements because such provisions "shall not apply to persons employed in ... executive ... capacities"); *see also Price v. Starbucks*, 2011 WL 169177, at *6 (Cal. App. 2 Dist. Jan. 20, 2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail").

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. 3:14-CV-04781-RS