SEYFARTH SHAW LLP
Jon D. Meer (SBN 144389)
E-mail:  jmeer@seyfarth.com
Sheryl L. Skibbe (SBN 199441)
E-mail:  sskibbe@seyfarth.com
Casey J.T. McCoy (SBN 229106)
E-mail:  cjtmccoy@seyfarth.com
Maya Harel (SBN 291990)
E-mail:  mharel@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:    (310) 277-7200
Facsimile:      (310) 201-5219

Attorneys for Defendant
NIKE RETAIL SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYAL PATEL, an individual, on behalf of herself, on behalf of all persons similarly situated, and as the representative of the State of California,<br><br>Plaintiff,<br><br>v.<br><br>NIKE RETAIL SERVICES, INC., a Corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No. 3:14-cv-04781-RS<br><br>Assigned to the Hon. Richard Seeborg<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[*Filed concurrently with Supplemental Declaration of Casey J.T. McCoy and Request for Judicial Notice*]<br><br>DATE:  May 21, 2015<br>TIME:   1:30 p.m.<br>CTRM.:  3 |

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. PLAINTIFF SATISFIES ALL OF THE ELEMENTS OF THE EXECUTIVE EXEMPTION ...................................................................................................................... 1

    A. Plaintiff Concedes Four Of The Six Elements Of The Exemption .................................. 1

        1. Plaintiff Concedes She Directed The Work of At Least Two Employees .............. 1

        2. Plaintiff Concedes She Made Recommendations To Hire, Fire, And Promote Employees ................................................................................................ 1

        3. Plaintiff Concedes That She Regularly Exercised Discretion And Independent Judgment ............................................................................................ 2

        4. Plaintiff Concedes That She Meets The Salary Basis Test ..................................... 3

    B. Plaintiff Cannot Rebut Her Admissions That She Managed A Customarily Recognized Subdivision Or Department of Nike ............................................................. 3

    C. Plaintiff Cannot Rebut Her Admissions That She Spent Over 50% Of Her Time On Exempt Duties Or Work Closely Related To Exempt Duties ...................................... 6

        1. Whether Duties Are Exempt Or Non-Exempt Is A Legal Question ....................... 6

        2. California Presumes Work To Be Exempt If An Employees Meets All Of The Other Requirements Of The Executive Exemption ......................................... 7

        3. Plaintiff Admitted In Her Resume, Deposition, and Declaration That She Spent The Majority of Her Time Performing Exempt Work ................................... 7

        4. Plaintiff's Remaining Assertions Regarding "Non-Exempt" Work Do Not Create A Triable Issue Because Plaintiff's Other Duties Were "Closely Related" To Exempt Work ..................................................................................... 11

        5. Defendant's Reasonable Expectations Precluded Plaintiff From Performing Non-Exempt Work For More Than 50% of Her Day ........................ 14

III. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Abdullah v. U.S. Sec. Assocs., Inc.*
  731 F.3d 952 (9th Cir. 2013) ...................................................................................................7

*Akaosugi v. Benihana Nat'l Corp.*
  2012 WL 3999855 (N.D. Cal., Sept. 7, 2012) ...........................................................3, 4, 12, 15

*Baldwin v. Trailer Inns, Inc.*
  266 F. 3d 1104 (9th Cir. 2001) ...............................................................................................11

*Brody v. AstraZeneca Pharm., LP*
  2008 WL 6953957 (C.D. Cal. June 11, 2008) .........................................................................6

*Cleveland v. Policy Mgmt. Sys, Corp.*
  526 U.S. 795 (1999) .................................................................................................................4

*Disc Golf Ass'n Inc. v. Champion Discs, Inc.*
  158 F.3d 1002 (9th Cir. 1998) .................................................................................................4

*Donovan v. Burger King Corp.*
  675 F.2d 516 (2d Cir. 1982) ...................................................................................................11

*Guilfoyle v. Dollar Tree Stores, Inc.*
  2014 WL 66740 (E.D. Cal. Jan. 8, 2014) .................................................................................2

*Heinemann v. Satterberg*
  731 F.3d 914 (9th Cir. 2013) ...................................................................................................1

*Icicle Seafoods, Inv. v. Worthington*
  475 U.S. 709 (1986) .................................................................................................................6

*Kahn v. Superior Chicken & Ribs*
  331 F. Supp. 2d 115 (E.D.N.Y. 2004) .....................................................................................6

*Kastor v. Sam's Wholesale Club*
  131 F. Supp. 2d 862 (N.D. Tex. 2001) ....................................................................................6

*Leatherbury v. C&H Sugar Co., Inc.*
  911 F. Supp. 2d 872 (N.D. Cal. 2012) .....................................................................................7

*Marlo v. United Parcel Serv., Inc.*
  2005 WL 6197774 (C.D. Cal. Mar. 1, 2005) ...........................................................................6

*Mellas v. City of Puyallup*
  201 F.3d 444 (9th Cir. 1999) .................................................................................................11

*Mitchell v. Peralta Comm. College Dist.*
    766 F. Supp. 834, 841 (N.D. Cal. 1991) ..........................................................................9

*Musgraves v. Sears Holding Mgmt. Corp.*
    2012 WL 3222905 (C.D. Cal. July 19, 2012)....................................................................7

*Nat'l Steel Corp. v. Golden Eagle Ins. Co.*
    121 F.3d 496 (9th Cir. 1997) ...........................................................................................9

*Nelson v. Pina Cmty. Coll.*
    83 F.3d 1075 (9th Cir. 1996) ...........................................................................................9

*Ortiz v. Georgia Pac.*
    973 F. Supp. 2d 1162 (E.D. Cal. Sept. 23, 2013) .............................................................4

*S. Cal. Gas Co. v. City of Santa Ana*
    336 F.3d 885 (9th Cir. 2003) ...........................................................................................9

*Smalley v. Home Depot USA, Inc.*
    2013 WL 1402348 (N.D. Cal. April 5, 2013).................................................................13

*Till v. Saks Inc.*
    2013 WL 5755671 (N.D. Cal. Sept. 30, 2013) .................................................................5

*Van Asdale v. Int'l Game Tech.*
    577 F.3d 989 (9th Cir.2009) ............................................................................................4

*Whiteway v. Fedex Kinko's Office and Print Serv., Inc.*
    2007 WL 2408872 (N.D. Cal. Aug. 21, 2007) ..........................................................11, 14

*Wilbur v. Silgan Containers Corp.*
    2008 WL 3863700 (E.D. Cal. Aug. 19, 2008).................................................... 1, 7, 8, 10

*Zeinali v. Raytheon Co.*
    2011 WL 2669459 (S.D. Cal., July 7, 2011) ...................................................................9

**STATE CASES**

*Edwards v. Earl Scheib, Inc. of Cal.*
    2003 WL 21470304 (Cal. Ct. App. June 25, 2003) ........................................................11

*Heritage Residential Care v. Division of Labor Standards Enforcement*
    192 Cal. App. 4th 75 (2005) ............................................................................................8

*McNett v. Network Mgmt. Grp., Inc.*
    2012 WL 4045190 (Cal. Ct. App. Sept. 14, 2012) ...........................................................6

*Mies v. Sephora USA, Inc.*
    234 Cal. App. 4th 967 (2015) ........................................................................................13

<s>
<s><s>
<s>
<s>
<s>
<s>
<s>
<s>
</s></s></s></s></s></s></s></s></s>

*Nordquist v. McGraw Hill Broad. Co.*
   32 Cal. App. 4th 555 (1995) ............................................................................................2

*Okura v. Kaiser Found. Health Plan, Inc.*
   2008 WL 2895952 (Cal. Ct. App. July 29, 2008) ............................................................7

*Schreck v. Wild Oats Markets, Inc.*
   2014 WL 631256 (Cal. Ct. App. Feb. 19, 2014) ........................................................5, 12

*Scott v. Cont'l Ins. Company*
   44 Cal. App. 4th 24 (1996) ..............................................................................................9

*Taylor v. United Postal Serv.*
   190 Cal. App. 4th 1001 (2010) .............................................................2, 3, 5, 6, 7, 11, 12

**FEDERAL STATUTES**

29 C.F.R. § 541.102 .........................................................................................................10, 11, 14

29 C.F.R. § 541.105 ......................................................................................................................5

29 C.F.R. § 541.106 ....................................................................................................................12

29 C.F.R. § 541.107 ......................................................................................................................2

29 C.F.R. § 541.108 ..........................................................................................................12, 13, 14

29 C.F.R. § 541.207 ......................................................................................................................2

**CALIFORNIA STATUTES**

Cal. Bus. & Prof. C. § 17200 .....................................................................................................15

**OTHER AUTHORITIES**

California Department of Labor, DLSE Opinion Letter, July 6, 1993 .........................................7

*Division of Labor Standards Enforcement, Enforcement Policies and Interpretations Manual,*
   § 53.6.4 ...........................................................................................................................12

*Merriam-Webster Dictionary*..........................................................................................................8

RJ Simmons, *Wage and Hour Manual for California Employers,* § 10.3(E) ............................12

Wage Order 7-2001 ............................................................................................................2, 6, 12

## I. INTRODUCTION

Plaintiff's own testimony shows there are no triable issues of fact as to whether she was properly classified as a salaried exempt employee. As Plaintiff admitted in her deposition, she was "always responsible for managing one or more departments" and spent "**most of her time** managing day-to-day operations." Based on these job duties, Plaintiff meets the test for exempt status as a matter of law.

## II. PLAINTIFF SATISFIES ALL OF THE ELEMENTS OF THE EXECUTIVE EXEMPTION

### A.   Plaintiff Concedes Four Of The Six Elements Of The Exemption[1]

#### 1.   Plaintiff Concedes She Directed The Work Of At Least Two Employees

Plaintiff does not dispute that she always supervised at least four or five employees, and eventually "a staff of 180 employees, including 40 direct reports and up to four managers." (Patel Dep., Ex. 1, 28:24-29:3, 32:6-7, 75:17-20, 81:9-22, 213:21-25.) Although Plaintiff claims she was not in charge of the store or any fixed department or subdivision, that separate argument does not create a factual dispute as to whether she customarily and regularly directs the work of two or more other employees. *See, e.g., Wilbur v. Silgan Containers Corp.,* 2008 WL 3863700, at *8 (E.D. Cal. Aug. 19, 2008) (finding the plaintiff customarily and regularly directs the work of two or more other employees notwithstanding the plaintiff's claim that he was "not in charge of . . . any other fixed department at any time.")

Defendant has demonstrated that Plaintiff regularly directed the work or two or more other employees (MPA at p. 8), thereby satisfying the third prong of the test for the executive exemption. Plaintiff makes no argument to the contrary.

#### 2.   Plaintiff Concedes She Made Recommendations To Hire, Fire, And Promote Employees

Plaintiff's opposition fails to address and therefore concedes that she made suggestions and recommendations as to the hiring, discipline, and firing of employees, as well as to promotions and other changes in status, that were given particular weight. Plaintiff's deposition admissions and resume could not be any clearer -- Plaintiff interviewed new applicants and "based on [her] interviews, [she] made

---

[1] A "party's failure to respond to a fact asserted in the motion permits a court to 'consider the fact undisputed for the purposes of the motion." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013)(quoting Fed.R.Civ.P. 56(e)(2)).

1

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

recommendations as to which employees should be hired and which employees should be rejected" and she "promoted five managers to roles of higher responsibility under [her] direction."  (Patel Dep., 51:11-14, Exh. 1).  Plaintiff also made recommendations as to who should be disciplined and terminated. (Patel Dep., 38:17-39:4; 182:20-183:6.)  There is no dispute that this element of the exemption is met.

### 3. Plaintiff Concedes That She Regularly Exercised Discretion And Independent Judgment

Plaintiff also fails to dispute that she regularly exercised discretion and independent judgment. Citing to an outdated regulation (29 C.F.R. § 541.107), Plaintiff states that Defendant must prove that a task was performed using the employee's "discretionary powers" rather than in a "routinized" fashion for the work to be considered exempt.[2]  Defendant need not prove that every job duty or task required discretion and independent judgment.  Even if some (or even a majority) of Plaintiff's decisions did not require discretion and independent judgment, the exemption is not destroyed.  *See, e.g., Guilfoyle v. Dollar Tree Stores, Inc.*, 2014 WL 66740 at *4 (E.D. Cal. Jan. 8, 2014) ("Courts have declined to set bright-line rules regarding what constitutes 'customarily and regularly'" for purposes of the executive exemption; "the phrase 'customarily and regularly' does not imply a 'majority of the time' test.")

Similarly, there is no requirement that Plaintiff must exercise discretion and independent judgment in all areas of store operations and management, or that she must be the only decision-maker in the store.  "Discretion and independent judgment" is defined merely as "the comparison and evaluation of possible courses of conduct and acting or making a decision after various possibilities have been considered."  29 C.F.R. § 541.207(a); *Nordquist v. McGraw Hill Broad. Co*., 32 Cal. App. 4th 555, 572 (1995) ("Discretion and independent judgment . . . involves the comparison of possible courses of

---

[2] The pre-2004 federal regulations implementing the FLSA use the phrase "discretionary powers" with respect to the executive exemption (29 C.F.R. § 541.107), reserving "exercise of discretion and independent judgment" for the administrative exemption.  (29 C.F.R. § 541.207(a).)   In contrast, Wage Order 7 of the California Wage Orders expressly includes the phrase "exercise of discretion and independent judgment" for both exemptions.  Courts therefore look to section 541.207 for interpretive guidance as to both state law exemptions.  *See Taylor v. United Postal Serv.,* 190 Cal. App. 4th 1001, 1024, fn. 11 (2010).

2
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  conduct, and acting after considering various possibilities"). Plaintiff, therefore, cannot escape her
2  exempt status by claiming that her scope of discretion could have been wider. (Patel Decl. ¶ 15.)[3]
3        Plaintiff does not offer any evidence to overcome her own admissions that she was "constantly
4  prioritizing" tasks such as "observing employees, the 'Bring Nike to Life' observations, the Performance
5  Action Record observations, the training, the merchandising and customer service and the supervision."
6  (Patel Dep., 157:10-19; 231:15-21.) Plaintiff's decision making extended to other areas as well. As
7  Plaintiff admitted, she "created and implemented training programs on her own" (Patel Dep., Exh. 1;
8  48:10-13); "[made] recommendations for the best business plan for [her] department" (Patel Dep.,
9  173:21-24); evaluated employee performance (Patel Dep., 139:17-25); and regularly made decisions
10 regarding staffing and product flow. (Patel Dep., 31:10-17; 55:23-56:3; 166:22-167:2). Plaintiff does
11 not dispute these admissions, or that these tasks required her to exercise discretion and independent
12 judgment.[4]

        **4.**    **Plaintiff Concedes That She Meets The Salary Basis Test**

14       Plaintiff expressly agrees that the salary basis test is met for the exemption. (Opp. p. 20.)
15 Plaintiff's annual salary was between $56,000 and $60,335, which is significantly more than twice the
16 state minimum wage. (Patel Dep. at 197:8-11, 15-25; 198:1-5.)

17     **B.**    **Plaintiff Cannot Rebut Her Admissions That She Managed A Customarily Recognized Subdivision Or Department Of Nike**

19       Plaintiff argues that she was not "in charge" of a recognized unit. (Opp. p. 15.) Plaintiff
20 contends that she was nothing more than a "mere supervisor" drawn from a "pool of supervisors"

---

[3] *See, e.g., Akaosugi v. Benihana Nat'l Corp.,* 2012 WL 3999855 at *5 (N.D. Cal., Sept. 7, 2012) ("Although plaintiffs may not have influenced or created certain policies, such as labor budgets, this does not refute that they regularly exercised discretion and independent judgment."); *Taylor*, 190 Cal. App. 4th at 1027 ("Nothing in the plain language of Wage Order 9 indicates the exemption applies only to the most senior management of an enterprise of the person with whom the proverbial 'buck' stops.")

[4] *See, e.g., Akaosugi,* 2012 WL 3999855, at *5 (discretion and independent judgment found where "Plaintiffs were expected to and did train employees, appraised employee performance, disciplined employees when they determined it necessary, determined how to deal with customer complaints and concerns, scheduled and assigned work, determined when and which employees to send home or call back in keeping with labor cost policies, and ensured compliance with company regulations and federal labor, health, and safety regulations.")

without a specific subdivision and who only supervised "rotating athletes." (*Id.*) Thus, she concludes she did not manage a customarily recognized unit, department, or subdivision. (*Id.*)

Plaintiff's deposition testimony was to the contrary.[5] Plaintiff testified that during her entire employment with Nike as an Assistant Head Coach, she was "responsible for a particular department or part of the store":

> Q. And so during the entire time, you were responsible for a particular department or part of the store, right?
>
> A. Yes.

(Patel Dep., 176:20-23.) As Plaintiff explained, she was "always responsible for managing one or more areas or departments of the store." (Patel Dep., 57:8-10.) This meant that Plaintiff was "responsible for the day-to-day operations of everything that happened in [her] department." (Patel Dep., 50:22-25.)

As Plaintiff explained, as the Assistant Head Coach of Consumer Experience she managed the entire front of the house, while the other Assistant Head Coach was responsible for the back of the house. (Patel Dep., 80:21-25; 181:18-20; 26:18-20). She acknowledged that each of these recognized subdivisions of the store has a continuing function -- "the front of the house is the retail merchandising area of the store" and "[t]he back of the house is the stockroom, shipping, the receiving, the backroom operations." (Patel Dep., 81:1-6.) She explained that the "front end of the store . . . included the registers, the apparel section and the footwear section." (Patel Dep., 81:4-16.) Managing the front of the store, Plaintiff testified that she "had four managers reporting to [her]," specifically "two department managers and their leads," and her role was to ensure that they "drive the consumer experience." *See Akaosugi*, 2012 WL 3999855, at *3 (finding that assistant managers whose "principal responsibility was to ensure that the restaurant and dining experience ran smoothly" managed a customarily recognized subdivision or department with a continuing function).

---

[5] "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by . . . contradicting his prior deposition testimony." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir.2009) (internal quotations omitted); *accord Cleveland v. Policy Mgmt. Sys, Corp.*, 526 U.S. 795, 806 (1999) ("[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement."); *Disc Golf Ass'n Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1008 (9th Cir. 1998) (same); *Ortiz v. Georgia Pac.*, 973 F. Supp. 2d 1162, 1162, 1171 (E.D. Cal. Sept. 23, 2013) (same).

Plaintiff then transitioned to be the Assistant Head Coach of Men's Footwear, where she was in charge of the Men's Footwear Department. (Patel Dep., 26:12-14.) In this capacity, her primary duty was to be "responsible for the men's footwear section of the store," "the employees who were working in the Men's Footwear Department," "making sure that her department met [the department's] daily, monthly, quarterly, or yearly financial goals," and "making sure that the athletes and others who reported to [her] made the goals set for [her] department." (Patel Dep., 28:2-6; 48:22-25; 49:6-10.)

There is no dispute that the Men's Footwear Department is a recognized subdivision of the store and, contrary to Plaintiff's contention, is identified as one on the store's zone charts. (*See, e.g.*, Patel Dep., Ex. 13.) The zone charts reflect that multiple employees are specifically assigned to work in that department each day. (Patel Dep., Ex. 13.)[6] As Plaintiff testified, there is a "zone chart for the different zones or department in the store." (Patel Dep.,161:5-8.) Plaintiff further explained that the zone chart "shows the employees assigned to each of [the] zones and their assigned hours of work." (Patel Dep., 161:9-11.) The zone chart "also shows the management level employees and where they are assigned to work." (Patel Dep., 161:12-15.)

The Men's Footwear Department, like the other zones or departments within the store, satisfies the requirement of having "specific, identifiable group[s] of employees who performed a regular set of specific tasks" within a larger organization. *See* 29 C.F.R. § 541.105(d) ("[I]t is incorrect to assume that in a large department, such as a large shoe department in a retail store which has separate sections for men's, women's, and children's shoes, for example, the supervision cannot be distributed among two or three employees, conceivably among more."); *Taylor,* 190 Cal. App. 4th at 1018 (holding that the subdivisions within the package centers are customarily recognized as separate units); *see also Schreck v. Wild Oats Markets, Inc.*, 2014 WL 631256, at *16 (Cal. Ct. App. Feb. 19, 2014) (evidence that the Assistant Store Managers were in charge of the grocery department while other departments were managed by a department head was sufficient to establish this element of the exemption).

---

[6] Plaintiff's contention that having employees rotate between departments from day to day defeats this element of the exemption test is without merit. *See Taylor*, 190 Cal. App. 4th at 1017 (finding that a continuity of personnel is not mandatory for establishing the existence of a recognized unit); *Till v. Saks Inc.*, 2013 WL 5755671, at *6 (N.D. Cal. Sept. 30, 2013) (finding that a showing that managers manage a *shift* of specific employees who perform the same primary function is sufficient).

5

Plaintiff also argues that she was not "in charge" of a recognized department or zone because the Head Coach of the store was ultimately responsible for all aspects of managing the store and that she was merely a supervisor drawn from a pool of supervisors. (Opp. p. 15.) This argument is based on the faulty premise that only the highest ranking person can be "in charge." Wage Order 7-2001(1)(A)(1)(a) merely requires "management" of a department or subdivision, not **exclusive** management. *See Marlo v. United Parcel Serv., Inc.*, 2005 WL 6197774, at *16 (C.D. Cal. Mar. 1, 2005) (holding that an employee need not be the sole manager of a subdivision to qualify for the executive exemption).

Even if Plaintiff reported to the Head Coach, this does not mean she was stripped of supervisory duties for her particular department or subdivision. *McNett v. Network Mgmt. Grp., Inc.*, 2012 WL 4045190, at *3 (Cal. Ct. App. Sept. 14, 2012) ("Appellants' interpretation of 'in charge' to mean the 'top' employee in charge is not supported by the plain language of part 541.104, which requires only that the employee be in charge, not that the employee be the top employee in charge.").[7] Nothing in the Wage Order or the relevant federal regulations prohibits multiple people from being in charge of an enterprise or department. *See Taylor*, 190 Cal. App. 4th at 1027 ("Nothing in the plain language of Wage Order . . . indicates the exemption applies only to the most senior management of an enterprise or the person with whom the proverbial 'buck' stops.").

    **C.**    **Plaintiff Cannot Rebut Her Admissions That She Spent Over 50% Of Her Time On Exempt Duties Or Work Closely Related To Exempt Duties**

        **1.**    **Whether Duties Are Exempt Or Non-Exempt Is A Legal Question**

The issue of whether certain duties are classified as exempt or non-exempt is a legal question, not a factual question. *See, e.g., Icicle Seafoods, Inv. v. Worthington*, 475 U.S. 709, 714 (1986) (whether employees' "particular activities excluded them from the overtime benefits of the FLSA is a question of law"); *Brody v. AstraZeneca Pharm., LP*, 2008 WL 6953957, at *1 (C.D. Cal. June 11,

---

[7] *See also Kahn v. Superior Chicken & Ribs*, 331 F. Supp. 2d 115, 119 (E.D.N.Y. 2004) (holding that whether a manager reports to superior managers who also have second level responsibility for the same department is immaterial); *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 867-68 (N.D. Tex. 2001) ("If final decision-making authority were the test for determining whether a person was an executive or administrative employee, one would rarely, if ever, qualify as such an employee under the regulations . . . . Typically, there is a hierarchy or line of supervision in any corporate entity or business wherein managers and supervisors have persons to whom they must report ….")

2008) (interpreting exempt status under California law; "the determination of whether an employee's duties and activities qualify as "exempt" is a question of law").

Indeed, courts routinely grant summary judgment on the issue of exempt status.[8]

### 2. California Presumes Work To Be Exempt If An Employees Meets All Of The Other Requirements Of The Executive Exemption

Although an employer has the burden of proof for showing that an employee is exempt as an affirmative defense, an employee cannot simply label tasks as "non-exempt" in an attempt to create a triable issue. If an employer offers evidence that all other elements of the exemption are met, there is a presumption that an employee is primarily engaged in exempt level work:

> In terms of enforcement, the Division takes the position that if an employee fulfills all of the other requirements of the managerial or executive exemption, the presumption is that the activity **the employee is "engaged in" is probably exempt unless the facts prove to the contrary. This presumption is logical if one considers that an employer is not going to allow an employee to supervise two or more workers and exercise discretion and independent judgment on matters of consequence, and then allow that employee to do primarily nonexempt work.** This would not only be illogical, it would also be unrealistic.

(California Department of Labor, Division of Labor Standards Enforcement, Opinion Letter dated July 6, 1993, Request for Judicial Notice, Exh. A; emphasis added ).[9]

### 3. Plaintiff Admitted In Her Resume, Deposition, And Declaration That She Spent The Majority Of Her Time Performing Exempt Work

Plaintiff prepared a resume that detailed her "Relevant Experience" working as a "Assistant Store Manager" with Defendant from "November 2010 to August 2013." (Patel Dep., Exh. 1.) On her resume, Plaintiff listed only "management" duties and specified that she "managed the day to day

---

[8] *See, e.g.*, *Leatherbury v. C&H Sugar Co., Inc.*, 911 F. Supp. 2d 872, 884 (N.D. Cal. 2012); *Musgraves v. Sears Holding Mgmt. Corp.*, 2012 WL 3222905 (C.D. Cal. July 19, 2012); *Taylor v. United Postal Serv.* 190 Cal. App. 4th 1001 (2010); *Wilbur v. Silgan Containers Corp.*, 2008 WL 3863700 (E.D. Cal. Aug. 19, 2008); *Okura v. Kaiser Found. Health Plan, Inc*., 2008 WL 2895952 (Cal. Ct. App. July 29, 2008).

[9] Opinion letters issued by the DLSE may be relied upon when interpreting California Wage Orders. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 958, 959 n.9 (9th Cir. 2013) ("The DLSE's opinion letters, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"; "The DLSE is the state agency empowered to enforce California's labor laws, including IWC Wage Orders.").

1  operation of a high revenue earning corporation." (Patel Dep., Exh. 1.)  (Patel Dep., Exh. 1; *see also*
2  Patel Dep. 48:22-25.)  Nowhere does she list the non-management tasks that she now claims to have
3  been performing.[10]

4  Plaintiff's deposition testimony confirms that she spent the majority of her time performing the
5  management tasks she outlined in her resume.  When describing her job duties, Plaintiff stressed that
6  "**most of the time** was spent out on the floor, **managing** the day-to-day operations of the department."
7  (Patel Dep., 70:9-11, 18-20; emphasis added.)[11]  Plaintiff explained that her job was to **manage** the
8  performance of athletes "**day-to-day throughout [her] shift**" "**throughout the time while [she was]**
9  **assistant head coach**."  (Patel Dep., 49:11-50:5; emphasis added.)  As Plaintiff admitted, these
10 performance management duties were "something she did "**throughout [her] shift every day**."  (Patel
11 Dep., 112:6-19; emphasis added.)[12]  Plaintiff's admissions that she performed management duties
12 "most" of the time during her shift as well as "throughout" her shift are dispositive as to whether she
13 was "primarily engaged" in performing exempt work.[13]  In order to find a triable issue, the Court would
14 have to improperly ignore the ordinary meaning of the words "most" and "throughout" as described by
15 Plaintiff in her testimony.[14]

---

[10] Plaintiff testified that the information in her resume was truthful and that she performed all of the duties listed on her resume while working as Assistant Head Coach for Defendant.  (Patel Dep., 31:15-17; 55:23-56:3.)

[11] Plaintiff's admission that she spent "most" of her time managing her department shows that there is no dispute that Plaintiff spent the majority of her time -- certainly more than 50% -- performing managerial duties.  The *Merriam-Webster Dictionary* lists the "definition of 'most'" as "(1) greatest in quantity, extent, degree; (2) the majority of." *Merriam-Webster Dictionary* (Online Ed.), available at http://www.merriam-webster.com/dictionary/most.

[12] Plaintiff's admission that she performed managerial activities "throughout" her day shows that there is no dispute that Plaintiff spent her entire shift performing managerial duties. The *Merriam-Webster Dictionary* lists the "definition of 'throughout'" as "(1) in or to every part; (2) during the whole time or action." *Merriam-Webster Dictionary* (Online Ed.), available at http://www.merriam-webster.com/dictionary/throughout.

[13] *See, e.g., Wilbur*, 2008 WL 3863700 at *12 (Plaintiff was primarily engaged in job duties that were within the executive exemption based on admissions that he performed exempt management tasks **"throughout the course of his shift."**) (emphasis added).

[14] *See, e.g., Heritage Residential Care v. Division of Labor Standards Enforcement,* 192 Cal. App. 4th 75, 83 (2005) ("When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word") (citing *Wasatch Prop. Mgmt. v. Degrate,*

8

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In an attempt to avoid her own admissions that she was primarily engaged in exempt work of "managing the day-to-day operations of the department," Plaintiff now contends that she spent "**a great deal of time**" performing non-exempt tasks, but does not attempt to quantify the amount of time spent. (Patel Decl. at ¶ 3.)[15]  Instead, Plaintiff merely offers vague and conclusory statements that she spent "**a large part of [her] day** engaged directly with assisting customers, putting product out to the floor, cleaning, folding and hanging product, ringing up customers at the cash register, and greeting customers." (Patel Decl. at ¶ 3.)  Such vague and conclusory statements cannot defeat summary judgment.[16]

In fact, when Plaintiff's testimony is quantified based on her description of her actual hours worked, she admits that she spent over 50% of her time performing exempt duties.  Plaintiff declared that she "regularly worked nine (9) to eleven (11) hours per workday." (Patel Decl. at ¶ 3.)  She testified that she spent 80% of her time on the sales floor or in her department. (Patel Dep., 215:11-18; Patel Decl. at ¶ 12.)  Of that 80%, Plaintiff testified to spending a "minimum of four (4) hours a day" and sometimes 6 hours in the Consumer Experience Leader ("CEL") or Manager on Duty ("MOD") roles. (Patel Decl. at ¶ 13; Opp. pp. 15,16.)[17]  As to the remaining 20%, Plaintiff does not dispute that this time

---

35 Cal. 4th 1111, 1121 (2005); *Scott v. Cont'l Ins. Company*, 44 Cal. App. 4th 24, 29 (1996) ("Courts . . . turn to general dictionaries when they seek to ascertain the "ordinary" meaning of words.")

[15] To be sure, Plaintiff does not provide any testimony stating that she spent over 50% of her time -- or any percentage of time -- performing any particular non-exempt tasks. Despite Plaintiff's admissions that she spent "most" of her time performing managerial duties "throughout" the day, she does not offer any specific evidence stating that she performed specific non-managerial duties for any percentage of time on any given shift.  Thus, Plaintiff has not offered the requisite "specific" or "substantial" evidence needed to defeat summary judgment.  *See So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) ("[T]he adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial."); *Nelson v. Pina Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("Mere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *Mitchell v. Peralta Comm. College Dist.,* 766 F. Supp. 834, 841 n.9 (N.D. Cal. 1991) ("the court cannot evaluate the significance [of the evidence] because [it] lacks foundation."); *see also Zeinali v. Raytheon Co.*, 2011 WL 2669459 at *4 (S.D. Cal., July 7, 2011) (granting summary judgment for employer and noting, "It is axiomatic that a 'conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.") (citations omitted.)

[16] *See Nat'l Steel Corp. v. Golden Eagle Ins. Co*., 121 F.3d 496, 502 (9th Cir. 1997) ("Conclusory allegations . . . without factual support, are insufficient to defeat summary judgment.")

[17] Plaintiff's Opposition concedes Plaintiff's CEL duties constitute exempt work of "walking the sales floor 'in constant motion ("Figure-eight')' and observing the performance of the non-exempt employees." (Opp. pp. 7, 13-15.) As explained in its moving papers, during this time Plaintiff would be

9

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

included the exempt tasks of performance management, business planning, and collaborating with her store manager or business partners. (MPA at p. 22-23; Patel Dep., 70:7-9; 101:25-102:4; 103:3-7.) Accordingly, based on her total shift time of 9 to 11 hours, **Plaintiff's declaration testimony admits she spent at least between 56% to 64% of her time performing exempt tasks**.[18]

    Plaintiff now tries to characterize her MOD duties as assisting with "such minutiae as 'employee purchases or employee checkouts or escalated consumer situations.'" (Opp. p. 7.) However, Plaintiff's duties in monitoring employee purchases -- as opposed to customer purchases -- are managerial in nature because only Assistant Head Coaches and other store leaders can process purchases from Defendant's own employees as part of their responsibilities for monitoring theft of product. (Deposition of Melissa Wood at 189:3-10.)[19] Further, Plaintiff cannot dispute the MOD also is responsible for "observing what's happening at the register and making sure that the consumer experience at the register was going smoothly and helping with any consumer issues." (Wood Dep. at 123:24-124:3.) Observing the work of employees is equivalent to supervising employees, and therefore is an exempt function. *See, e.g.*, *Wilbur*, 2008 WL 3863700, at *12 (holding that a supervisor was exempt if he was using

---

"constantly in movement, constantly observing, providing coaching in the moment, feedback, praise, making sure that product was hitting the floor, and … that employees were executing their job duties." (MPA p. 20; Patel Dep., 122:9-12; 123:17-22.) It is undisputed these are all exempt tasks. See 29 C.F.R. § 541.102 (exempt management duties include "directing the work of employees," "appraising employees' productivity and efficiency," "controlling the flow and distribution of materials or merchandise and supplies," and "apportioning the work among the employees.")

[18] For a 9 hour day, according to Plaintiff's testimony, 80% or 7.2 hours were spent on the floor, of which 4 were performing exempt CEL or MOD tasks, and 20% or 1.8 hours were spent in the office on exempt tasks. Even assuming Plaintiff spent the other 3.2 hours on the floor performing non-exempt tasks (which is contrary to the evidence), **5.8 hours (4 +1.8) or 64% of her 9 hour day was spent on exempt tasks**.

  For an 11 hour day, according to Plaintiff's testimony, 80% or 8.8 hours were spent on the floor, of which 4 were performing exempt CEL or MOD tasks, and 20% or 2.2 hours were spent in the office on exempt tasks. Even assuming Plaintiff spent the other 4.8 hours on the floor performing non-exempt tasks (which is contrary to the evidence), **6.2 hours (4 + 2.2) or 56% of her 11 hour day was spent on exempt tasks**.

[19] The applicable regulations provide that monitoring for theft is a managerial function. *See* 29 CFR 102 ("management" includes "providing for the safety of the employees or the property"); s*ee also, Wilbur*, 2008 WL 3863700 at *7 (holding that a supervisor was exempt, because his responsibilities included the "safety and security of employees"). Similarly, the applicable regulations provide that controlling inventory is also a managerial function. 29 C.F.R. § 541.102 ("management" includes "controlling the flow and distribution of materials or merchandise and supplies").

"peripheral vision . . . consistently watching [his] surroundings and observing.")[20]  Similarly, attending to customer service issues requiring managerial input is an exempt function.  *See Taylor,* 190 Cal. App. 4th at 1019 (exempt job duties included "communicating with customers to respond to service concerns" and "addressing and solving customer concerns"); *Edwards v. Earl Scheib, Inc. of Cal.*, 2003 WL 21470304, at *6 (Cal. Ct. App. June 25, 2003) (recognizing that "responding to customer complaints" is an exempt duty).

As part of her MOD responsibilities, Plaintiff also testified that she performed bag checks "to investigate what [employees] were leaving out with ... to report it to our loss prevention."  (Patel Dep., 115:3-8, 14-20; 122-9-10.)  Plaintiff now attempts to characterize this work as non-exempt because the regulations only list "providing for the safety of the men and property," and not the "security" of the property.  (Opp. p. 10, fn 4.)  Nevertheless, Plaintiff cannot dispute that her responsibility for "loss prevention" of inventory is an exempt managerial duty.[21]

### 4. Plaintiff's Remaining Assertions Regarding "Non-Exempt" Work Do Not Create A Triable Issue Because Plaintiff's Other Duties Were "Closely Related" To Exempt Work

Plaintiff's remaining argument is that her work cannot be considered exempt because many of the same tasks were performed by non-exempt employees.  (Opp. p.10.)  However, this does not necessarily mean that Plaintiff was performing non-exempt work.  *See Baldwin v. Trailer Inns, Inc.*, 266 F. 3d 1104, 1115 (9th Cir. 2001) (that non-exempt employees "may have performed some managerial

---

[20] Accord *Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982) (holding that managerial duties are still pertinent even if employees require very little direct supervision; "it is clear that the restaurants could not operate successfully unless the managerial functions … such as determining the amount of food to be prepared, … scheduling employees, keeping track of inventory, and assigning employees to particular jobs, were performed."*); see also Mellas v. City of Puyallup*, 201 F.3d 444, 1999 (9th Cir. 1999) ("[Plaintiff] argues that he did not provide much actual, day-to-day supervision because his subordinates were competent, motivated employees who functioned well with minimal oversight …. Plaintiff's position would create the odd result that a manager with authority over a veteran crew of responsible employees who follow the rules and work independently **would not** be exempt, while a manager with identical authority over a group of less experienced employees who require constant attention **would** be exempt.") (emphasis in original).

[21] *See, e.g., Whiteway v. Fedex Kinko's Office and Print Serv., Inc.*, 2007 WL 2408872 at *8 (N.D. Cal. Aug. 21, 2007) ("exempt duties include … controlling inventory and equipment"); 29 C.F.R. § 541.102 ("management" includes "controlling the flow and distribution of materials or merchandise and supplies.").

11

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  tasks does not render the tasks nonexempt"); *Schreck*, 2014 WL 631256 at *12 (duties may be
2  considered non-exempt "even though the identical task performed for a different, nonmanagerial reason
3  would be nonexempt"); *accord Division of Labor Standards Enforcement, Enforcement Policies and*
4  *Interpretations Manual*, § 53.6.4 ("While it is possible that each of these activities could be assigned to
5  non-exempt personnel, performance of these tasks by an otherwise exempt managerial employee would
6  not affect the exemption").

7  California law provides that supervisory or exempt duties includes all time spent on tasks that are
8  "directly and closely related to exempt work." *See* Wage Order No. 7-2001(1)(A)(1)(e). It also includes
9  all time spent on tasks that are viewed as a means for carrying out exempt functions. *See Taylor,* 190
10 Cal. App. 4th at 1018 ("Exempt management work includes not only the actual management of the
11 department and the supervision of the employees therein, but also activities which are closely associated
12 with the performance of such managerial and supervisory functions or responsibilities.").

13 When addressing the requirement that an employee is "primarily engaged" in performing exempt
14 duties, Wage Order 7-2001 explicitly states that "the activities constituting exempt work and non-
15 exempt work shall be construed in the same manner as such terms are construed . . . in 29 C.F.R.
16 §§ 541.102, 541.104-111, and 541.115-116." As provided in 29 C.F.R. § 541.108(a), a task performed
17 because it is "helpful in supervising the employees or contribute[s] to the smooth functioning of the
18 department" is exempt, even though the identical task performed for a different, non-managerial reason
19 would be non-exempt. *Accord, Schreck*, 2014 WL 631256 at *12 ("A task performed because it
20 "contribute[s] to the smooth functioning of the department' is exempt.").[22]

21 As provided in 29 C.F.R. § 541.106(a), "concurrent performance of exempt and non-exempt
22 work does not disqualify an employee from the executive exemption;" "generally, exempt executives
23 make the decision when to perform non-exempt duties and remain responsible for the success or failure
24 of business operations and their management when performing non-exempt work." [23] Thus, a supervisor

---

[22] *See, also, Akaosugi*, 2012 WL 3999855, at *5 (finding that plaintiff's primary responsibility of "mak[ing] sure everything was running smoothly . . . necessarily entailed directing and managing employees on a time-sensitive basis").

[23] *Accord,* RJ Simmons, *Wage and Hour Manual for California Employers,* § 10.3(E), p. 427 (Castle Publications Limited, 14th Ed., 2010 ("exempt employees must multi-task to perform their managerial, supervisory and administrative functions and responsibilities effectively. Activities that are directly and

12
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

can still be "primarily engaged" in exempt work even when they perform tasks such as assisting customers. *See, e.g., Mies v. Sephora USA, Inc.*, 234 Cal. App. 4th 967, 977, n. 9 (2015) ("An assistant manager can supervise employees and serve customers at the same time without losing the exemption.") (citing 29 C.F.R. § 541.106(a)); *accord, Smalley v. Home Depot USA, Inc.*, 2013 WL 1402348 at *9 (N.D. Cal. April 5, 2013) ("particularly for the retail industry, courts often recognize that exempt and non-exempt work is often concurrently performed and does not defeat the executive exemption;" "the Court agrees with the general proposition that exempt and non-exempt tasks may be performed simultaneously").

Plaintiff admitted that "**80% of the job**" was "managing the day to day operations of the store." (Patel Dep. 70:18-19.)  As part of her duties for "managing day to day operations," Plaintiff was required to make sure that the store was running properly, which consisted of "whatever that called for, whether it was assisting customers, putting product out to the floor, cleaning, folding, hanging [and] . . . 80% of the job was just being out on the floor and whatever that entailed." (Patel Dep. 70:18-25.) Plaintiff admitted that her duties were to do "whatever it takes" to ensure smooth operations.  These duties are precisely what are considered exempt managerial responsibilities. *See, e.g.*, 29 C.F.R. § 541.108(e) ("a department manager or buyer in a retail or service establishment who goes about the sales floor observing the work of sales personnel under his supervision to determine the effectiveness of their sales techniques, checking on the quality of customer service being given, or observing customer preferences and reactions to the lines, styles, types, colors and quality of the merchandize offered, is performing work which is directly and closely related to his managerial and supervisory functions.")

Although Plaintiff argues that her managerial activities included "stocking shelves," she explained that it was her responsibility to make "constantly changing decisions" about whether to bring out more product based on her assessment of business needs and it was her responsibility to control the appropriate level of inventory:

> Q. So based on the level of business activity, there would be a **constantly changing decision-making** about whether to bring out more stock or whether to keep stock back in the stockroom.

---

closely related to exempt work and are intertwined with that work must be viewed as exempt when assessing whether employees are primarily engaged in exempt duties").

13

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

      A. Yes. **We had to manage the product flow** based off of sell-through and inventory levels.

(Patel Dep. 166:22-167:2; emphasis added)  As Plaintiff explained, managers were responsible for inventory control:

      Q. So managers were responsible for inventory control.

      A. What do you mean by "inventory control?"

      Q. To make sure that the amount of inventory was present per company guidelines and to make sure that the merchandise was out per company guidelines.

      A. Yes.

(Patel Dep. 168:7-13.)[24]  These are precisely exempt tasks because they are closely related to exempt duties such as ensuring smooth store operations. *See, e.g.*, 29 C.F.R. § 541.108(c) ("Another example of work which may be directly and closely related to the performance of management duties is the distribution of materials or merchandise and supplies. Maintaining control over the flow of materials or merchandise and supplies in a department is ordinarily a responsibility of the managerial employee in charge.").

      **5.    Defendant's Reasonable Expectations Precluded Plaintiff From Performing Non-Exempt Work For More Than 50% Of Her Day**

To the extent that Plaintiff was spending more than 50% of her time on non-managerial activities, she was not performing based on Defendant's reasonable expectations.  The very job description that Plaintiff adopts, attaches and quotes in her declaration sets forth Defendant's expectation that an Assistant Head Coach "typically does not spent more than 20% of time performing the work supervised."  (Patel Dep. Ex. 15; Patel Decl. Ex. 4.)  Consistent with the job description that Plaintiff relies upon, the deposition testimony from Defendant's witness selected under Rule 30(b)(6)

---

[24] *See, e.g.*, *Whiteway*, 2007 WL 2408872 at *8 ("exempt duties include … controlling inventory and equipment"); 29 C.F.R. § 541.102 ("management" includes "controlling the flow and distribution of materials or merchandise and supplies"). To the extent there were guidelines for inventory control, this does not take away the exempt nature of Plaintiff's work. *See Whiteway*, 2007 WL 2408872 at * 7 ("[plaintiff] maintains that because Fed Ex Kinko's has standardized policies and procedures, [managers] are not exempt. [Plaintiff] points out that the defendant has an operations manual approximately 400 pages long of step-by-step instructions and diagrams which all [managers] must follow.  Similar arguments that this undermines the exercise of independent judgment have been soundly rejected.") (citations omitted).

confirms that Defendant did not expect Plaintiff to spend a significant amount of time bringing stock out on the floor." (Wood Dep. at 189:17-20.)  Rather, Defendant expected that "not more than twenty percent of time would be performing [duties that non-exempt employees perform].  She should actually be supervising." (Wood Dep. at 189:21-190:2.)[25]

Plaintiff's performance evaluation confirmed that she was expected to perform and did perform exempt managerial duties.  For example, Plaintiff's performance evaluation commended her for "taking on control of the hiring process." (Patel Dep., Exh. 22; 198:6-16, 198:23-25.)  She also was recognized as having "found exciting ways to deliver praise and recognition to the team." (Patel Dep., Exh. 22.)  Any argument that Plaintiff's performance was at odds with Defendant's reasonable expectations is contrary to her performance evaluations and Plaintiff's admission that her performance evaluation contains "accurate expectations" for her work.  (Patel Dep., 199:2-16.)

## III.  CONCLUSION

For all of the reasons stated above and in Nike's moving papers, summary judgment should be granted.  All of Plaintiff's claims fail on the grounds that Plaintiff was an exempt employee.[26]

DATED:  May 7, 2015

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Jon D. Meer
    Jon D. Meer
Attorneys for Defendant
NIKE RETAIL SERVICES, INC.

---

[25] Plaintiff's reliance on *Akaosugi v. Benihana Nat. Corp.*, 2012 WL 3999855 (N.D. Cal. 2012) to discount Defendant's job description is misplaced.  In contrast to Defendant's job description, the job description in *Akaosugi* did not specifically reference the expectation of the amount or percentage of time spent on exempt duties.  While Defendant's job description contains such language, there is no requirement under the law that it do so.  Plaintiff cannot dispute that the job descriptions lists only management duties under "key job accountabilities." (Patel Dep. Ex. 15; MPA p. 18.)

[26] As Plaintiff concedes, her claims for "failure to provide accurate itemized statements," "failure to provide wages when due," "unfair competition in violation of Cal. Bus. & Prof. C. § 17200 et seq." and "violation of the private attorneys general act" are all derivative claims that turn on the applicability of the exemption under California law.  (Opp. p. 21.)

15
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT