UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYAL PATEL,<br>            Plaintiff,<br>    v.<br>NIKE RETAIL SERVICES, INC.,<br>            Defendant. | Case No. 14-cv-04781-RS<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Payal Patel, who once served as an assistant manager of a retail store operated by defendant Nike Retail Services, Inc. ("Nike"), brings suit against her former employer for alleged violations of California law. Patel seeks ultimately to serve as representative of a putative class of assistant managers who, she claims, were improperly classified as executives exempt from receiving overtime pay, itemized wage statements, and meal and rest breaks. Nike moves for summary judgment, contending there is no genuine issue of material fact that Patel was an executive exempt from the benefits of California's wage and hour statutes.

Patel concedes that she satisfies most of the requirements necessary to qualify for the executive exemption, leaving only two elements remaining to be adjudicated. As to the first, factual disputes preclude summary judgment on the question of whether Patel's principal duty was the management of a recognized department of the retail store. Likewise, Nike has not demonstrated that undisputed facts support a finding that Patel's workday was primarily composed of exempt tasks. Its motion for summary judgment is therefore denied.

## II. BACKGROUND

From November 2010 to August 2013, Patel was employed as an "assistant head coach" of a Nike clearance retail store located in San Leandro, California. Along with other assistant head coaches at the San Leandro location, Patel was "second in command" to a single "head coach," who was "responsible for all aspects of managing" the store. Patel (along with the head coach and other assistant head coaches) presided over a staff of more than 150 employees. Nike classified Patel as an executive exempt from overtime pay and other benefits.

In late 2013, Patel filed suit against Nike in California state court. In October 2014, Nike removed the action to this court on the basis of diversity jurisdiction. Patel asserts five claims for relief under California law, all stemming from the overarching premise that she and similarly-situated assistant head coaches were improperly classified as salaried executives exempt from overtime pay and related benefits. The parties exchanged discovery, and Nike deposed Patel. Nike now moves for summary judgment on each of Patel's claims.

## III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

To preclude the entry of summary judgment, the non-moving party must bring forth material facts. Facts are material if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including with respect to the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir.1987). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587.

## IV.   DISCUSSION

Under California law, employees are entitled to overtime pay for any work in excess of eight hours in one workday, or 40 hours in any one workweek, "unless the employer affirmatively establishes that the employee qualifies for a statutory exemption." *Heyen v. Safeway Inc.*, 216 Cal. App. 4th 795, 816 (2013); *see* Cal. Lab. Code § 510(a). During her tenure as an assistant head coach, Patel was classified as an "executive" and therefore treated as exempt from the requirements of California's overtime laws. Cal. Lab. Code § 515(a). Assuming *arguendo* that Nike has demonstrated Patel met the requirements of California's executive exemption as a matter of law, her claims—all of which flow from the argument that she was improperly classified as exempt—cannot go forward. If, on the other hand, genuine issues of material fact preclude summary judgment as to her exempt status, Patel's claims remain viable.

In light of the "remedial nature of the enactments authorizing the regulation of wages, hours and working conditions for the benefit of employees," California courts narrowly construe "exemptions from statutory mandatory overtime provisions." *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 794 (1999) (internal citations and quotation marks omitted). An employer's claim that an employee is exempt from overtime laws is considered to be an affirmative defense, "and therefore the employer bears the burden of proving the employee's exemption." *Id.* at 794-95.

California Wage Order No. 7-2001(1)(A)(1) ("the Wage Order")[1] defines an "executive" in the mercantile industry as "any employee":

> (a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and
>
> (b) Who customarily and regularly directs the work of two or more other employees therein; and
>
> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
>
> (d) Who customarily and regularly exercises discretion and independent judgment; and
>
> (e) Who is primarily engaged in duties which meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order:[2] 29 C.F.R. Sections 541.102, 541.104-111, and 541.115-116. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.
>
> (f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

To be deemed an executive exempt from the requirements of state wage and hour laws, an employee must satisfy all six criteria enumerated in the Wage Order. *Heyen*, 216 Cal. App. 4th at 816.

---

[1] The Wage Order is codified at Title 8, section 11070(1) of the California Code of Regulations.

[2] The federal Fair Labor Standards Act ("FLSA") regulations incorporated by reference into the Wage Order were amended and reordered after the Wage Order was promulgated. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1266 (11th Cir. 2008) (discussing "old" and "new" FLSA regulations). By the plain terms of the Wage Order, the regulations in effect in 2001 remain relevant in these proceedings as guidelines for determining whether an employee qualifies for the exemption.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
CASE NO. 14-cv-04781-RS

Patel acknowledges that she earned more than twice the state minimum wage throughout her tenure as an assistant head coach.[3] She also does not challenge Nike's claims that she directed the work of two or more employees, made suggestions regarding hiring and firing which were given particular weight, and customarily and regularly exercised discretion and independent judgment. Absent any dispute and in light of the evidence in the record, Nike has demonstrated that Patel's work as an assistant head coach met the requirements of subsections (b) through (d) of the executive exemption as a matter of law. The only live questions here are (1) whether Patel managed a customarily recognized department or subdivision of Nike and (2) whether she was "primarily engaged" in exempt work.

A. <u>Management of Customarily Recognized Department or Subdivision</u>

29 C.F.R. § 541.104[4] provides guidelines for determining whether an employee is responsible for the management of a "customarily recognized department or subdivision" of a mercantile enterprise:

> (a) The phrase "a customarily recognized department or subdivision" is intended to distinguish between a mere collection of men assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. In order properly to classify an individual as an executive he must be more than merely a supervisor of two or more employees; nor is it sufficient that he merely participates in the management of the unit. He must be in charge of and have as his primary duty the management of a recognized unit which has a continuing function.

The California court of appeal has further observed that "a shift of specific workers, performing the same primary function as a permanent unit operating within a larger organizational structure, and recognized and supervised as such within that operation, constitutes a customarily recognized

---

[3] In order to qualify for the executive exemption on the basis of the California minimum wage in effect from 2010 to 2013, an employee must have earned at least $33,280 per year. Over the almost three years she served as an assistant head coach, Patel received an annual salary ranging from approximately $56,000 to $60,000.

[4] All citations to the FLSA regulations in this order refer to the provisions in effect in 2001, since amended and reordered.

'department or subdivision' within the meaning" of the Wage Order. *In re United Parcel Service Wage and Hour Cases*, 190 Cal. App. 4th 1001, 1017 (2010).

As an "enterprise" comprising many retail establishments, Nike was certainly entitled to classify head coaches—who, again, are ultimately responsible for the management of retail stores—as exempt. 29 C.F.R. § 541.104(b) ("where an enterprise comprises more than one establishment, the employee in charge of each establishment may be considered in charge of a subdivision of the enterprise"). Patel argues, by extension, that the *only* recognized subdivisions of Nike Retail Services, Inc. are the individual stores themselves. Divisions or departments within a single store, she suggests, cannot properly be considered "customarily recognized" subdivisions of the "enterprise."

The state and federal regulations do not squarely address whether Nike was permitted to classify Patel as an executive because she managed a subdivision of one retail establishment (the San Leandro clearance store) in a large constellation of such establishments. Yet, while there is a relative "dearth of caselaw interpreting the rather simple phrase 'customarily recognized department or subdivision thereof,' " the available authorities indicate that an employee may be considered exempt if she manages some established sub-department of a single establishment within a large, multi-location retail enterprise. *In re UPS*, 190 Cal. App. 4th at 1016, 1018 (affirming that subdivisions of UPS package centers "with permanent functions, status, and defined shifts of workers" meet the regulations' definition of a "recognized department"); *Akaosugi v. Benihana Nat. Corp.*, No. C-11-01272-WHA, 2012 WL 3999855, at *4 (N.D. Cal. Sept. 7, 2012) (divisions within retail chain restaurants (culinary, service, beverage and bar, facilities) satisfied requirement of exemption); *Scherer v. Compass Group USA, Inc.*, 340 F.Supp.2d 942, 944, 950 (W.D. Wisc. 2004) (employee who presided over one division of a single retail food service establishment—which was part of a larger chain—was responsible for managing a "customarily recognized department"). The foregoing cases reach the correct result: nowhere does the exemption suggest that a retail establishment is only permitted to classify a single "executive" per store. If Patel was indeed responsible for "a customarily recognized

department" of a Nike retail store, she would satisfy that prong of the exemption. The question remaining is whether Patel managed any such department.

From November 2010 until some undefined date in 2012, Patel's title was assistant head coach of "consumer experience." Patel explained that because she had developed expertise in Nike's "very specific program on how to drive the consumer experience" over the course of her employment with the company, she was promoted to oversee that function at the San Leandro store. According to Patel, this position entailed responsibility over "the consumer experience for the entire front end of the store," including "the registers, the apparel section and the footwear section." Another assistant head coach was responsible for "back of the house" functions such as shipping and receiving. Four managers reported directly to Patel during this period; she trained them to improve the interactions that sales employees ("athletes," in Nike's corporate lexicon) had with customers. Patel also oversaw the "visual look and organization of the merchandise" to ensure that products were displayed according to company guidelines.

Sometime in 2012, Nike's organizational structure changed, and Patel made a lateral move to the position of assistant head coach of men's footwear. In that capacity, Patel was "responsible for the men's footwear department of the store" and supervised, on average, a rotating cast of five athletes assigned to that post. She no longer supervised any manager-level employees.

More broadly, Patel testified that, throughout her tenure as an assistant head coach, she was always "responsible for a particular department or part of the store." She also confirmed that, as indicated on a resume prepared after her separation from employment with Nike, she was responsible for "the day-to-day operations of everything that happened" in her department.

Her deposition testimony notwithstanding, Patel contends that genuine issues of material fact preclude summary judgment on the question of whether she truly had responsibility for any "recognized unit" with a "continuing function." 29 C.F.R. § 541.104(a). She first argues that "consumer experience" was not a recognized department within Nike. This argument is belied by Patel's testimony that Nike had a "very specific" corporate program regarding the "consumer experience" and that her proficiency in the program was the genesis of a promotion which gave

her authority over four dedicated direct reports and the entire "front of the house." *See, e.g., DeBartolo v. Butera Finer Foods*, No. 95-C-2705, 1995 WL 516990, at *4 (N.D. Ill. Aug. 29, 1995) (employee responsible for managing "front end" of grocery store (namely, cashiers and baggers) managed "a recognized department or subdivision"). Apart from conclusory statements regarding the "vagueness" of the consumer experience role, Patel does nothing to controvert the evidence in the record that she was broadly responsible for the retail function of the store. Because she has failed to raise anything beyond "a metaphysical doubt," summary judgment for Nike as far as this issue is concerned is not precluded. *Matsushita*, 475 U.S. at 586.

Patel's argument that men's footwear was not a recognized department of the Nike retail store is similarly untenable. According to her deposition testimony, Patel had a number of dedicated responsibilities surrounding men's footwear (which she termed "my department"). It is undisputed that Patel was responsible for supervising the five employees, on average, assigned to work in men's footwear on any given day.[5] She also worked with the store's scheduling manager to forecast "business trends in my department and what was coming up . . . to make sure I had enough people in my department." Finally, Patel explained that she monitored the daily, monthly, quarterly, and yearly financial goals for her department and was responsible for making sure those benchmarks were achieved. Given these undisputed facts, Patel's present assertion—that men's footwear is "not a department"—rings hollow.[6]

More persuasively, Patel contends that despite her titles and general responsibility for consumer experience and men's footwear, she was nothing more than "a supervisor drawn from a

---

[5] "[A]n otherwise exempt employee" does not lose the exemption "merely because he draws the men under his supervision from a pool." 29 C.F.R. § 541.104(e).

[6] Patel argues that Nike has not produced any corporate documents identifying either "consumer experience" or "men's footwear" as recognized departments of the Nike enterprise. In fact, "Men's FW" is noted as a "Dept." on the "Daily Sales and Zone Chart" listing employee shifts and assignments. Regardless, neither regulation nor caselaw creates any requirement that an employer must produce corporate documents affirmatively establishing the existence of a "recognized department" where other evidence in the record is sufficient to establish that uncontroverted fact.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
CASE NO. 14-cv-04781-RS
8

pool of supervisors" who supervised employees assigned to her "from a pool" and was "assigned a job or series of jobs from day to day or week to week." 29 C.F.R. § 541.104(f). Under the FLSA regulations, such an employee cannot be considered "in charge of a recognized unit with a continuing function." *Id.* Patel's argument in this regard centers on her recurring responsibilities as, respectively, manager-on-duty ("MOD") and consumer experience leader ("CEL"). As she explained, part of the Nike retail job—"whether you're a head coach, assistant head coach, coach"—was to work assigned shifts as the MOD or CEL:

> The manager on duty would be the person that we would call, for example, when we needed a bag check. That way, the consumer experience leader [could] continue moving on the sales floor. We used to call it a figure eight, so that you could be fluid in moving and not getting caught up, taking care of things at registers. If a cashier had an issue with a register, we would call in the MOD, because they would be stationary during those times and working with resolving those issues. Whereas, a consumer experience leader would be constantly in movement, constantly observing, providing coaching in the moment, feedback, praise, making sure that product was hitting the floor [and] that employees were executing their job duties.

Patel testified that she spent between two (or, according to her declaration, four) and six hours of each workday serving as either MOD or CEL, out of a shift which regularly lasted nine to eleven hours.

The executive exemption requires "management of a recognized unit" to be the employee's "*primary duty*." 29 C.F.R. § 541.104(a) (emphasis added). Patel had a hybrid assignment. Although it appears she was always "responsible" for her department,[7] she spent a considerable amount of time serving in a pool of floating supervisors responsible for store-wide functions. At

---

[7] As she testified:

> Q. [Y]our day would be comprised of a number of different roles, right?
>
> A. Not necessarily roles. . . . you would be scheduled time on the sales floor as a CEL or an MOD during your shifts [ ] to help support the business. In addition to that, we also continue to manage our own departments . . . .
>
> . . . . .
>
> A. In terms of how much time we spent on managing our own department . . . we had . . . to use our sense of urgency and planning to be able to make sure we met those demands.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
CASE NO. 14-cv-04781-RS
9

1    bottom, the evidence in the record is inconclusive regarding whether Patel spent the bulk of her
2    time and energies on her duties as the head of a department, or whether she was instead principally
3    dedicated to more general activities (such as CEL and MOD work, assisting customers, and
4    stocking products). Drawing all reasonable inferences in favor of the non-moving party, Nike has
5    not demonstrated that it is entitled to judgment as a matter of law on the question of whether
6    Patel's primary duty was the management of a recognized unit.

B.     Primarily Engaged in Exempt Duties

Nike also contends that Patel was "primarily engaged in" exempt work. The term "primarily" means "more than one-half the employee's work time." Cal. Code. Regs. tit. 8, § 11070 subdiv. (2)(K). "The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement." *Id.* at subdiv. (1)(A)(1)(e).

Exempt work includes "all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions." *Id.* The FLSA regulations include many detailed examples of exempt and non-exempt tasks. As the California court of appeal recently observed after a lengthy meditation on the FLSA regulations and surrounding California law, "identical tasks may be 'exempt' or 'nonexempt' based on the purpose they serve within the organization or department. Understanding the manager's purpose in engaging in such tasks, or a task's role in the work of the organization, is critical to the task's proper categorization." *Heyen*, 216 Cal. App. 4th at 822.

It is undisputed that Patel engaged in a variety of exempt tasks as an assistant head coach. These duties included:

- Preparing reports on employee performance and making recommendations regarding hiring, firing, promotion, and discipline;
- Interviewing candidates, developing training materials, and personally training employees to comply with Nike's "consumer experience" standards;

- Overseeing her department of the store to ensure that it was adequately staffed and that it succeeded in meeting sales goals; and

- Providing coaching and feedback to employees.[8]

Nike further emphasizes that Patel's resume characterized her assistant head coach position as managerial. Indeed, Patel's resume highlighted the following "Management" and "Human Resources" experience:

- Managed 179 employees;

- Trained staff, created and implemented training programs, and provided ongoing coaching;

- Monitored daily, monthly quarterly, and yearly financial goals;

- Facilitated recruitment and hiring; and

- Administered payroll.[9]

There is no colorable dispute that Patel's work on these managerial functions was exempt. It is less clear, however, whether Patel was "primarily engaged in" such tasks.

At her deposition, Patel testified that she spent 20 percent of her time at the store in the back office preparing Performance Activity Records and weekly sales recaps on the computer, planning for her department, and collaborating on tasks with other managers. Patel described her remaining duties as follows:

> 80 percent of the job was managing the day-to-day operations of the store, whatever that called for, whether it was assisting customers, putting product out to the floor, cleaning, folding, hanging -- assisting customers, putting out product,

---

[8] 29 C.F.R. § 541.102 defines "exempt" management work to include (1) "[i]nterviewing, selecting, and training of employees," (2) "setting and adjusting . . . hours of work," (3) "directing their work," and (4) "appraising their productivity and efficiency for the purpose of recommending promotions."

[9] At her deposition, Patel affirmed that the duties listed on her resume accurately described her role as assistant head coach. While the resume is entitled to some weight, if, as she claims, Patel indeed spent a great deal of time stocking products and presiding over cash registers, it is unlikely that she would have chosen to emphasize those duties in presenting herself to prospective employers. Nor are Nike's "expectations" of its assistant head coaches—as articulated in a corporate "job description" found in the record—dispositive evidence that Patel was properly classified as an executive. *Ramirez,* 20 Cal. 4th at 802 (employer's characterization of expected duties cannot be alone determinative; otherwise, "the employer could make an employee exempt from overtime laws solely by fashioning an idealized job description that had no basis in reality").

> cleaning, ringing up customers, greeting customers, folding. 80 percent of the job was just being out on the floor and whatever that entailed.

Patel appears to concede that her office-based work was made up of exempt tasks. Accordingly, if Patel spent at least 31 percent of her remaining time "on the floor" engaged in exempt work, she met the final criteria necessary for classification as an executive.

Patel's work on the floor encompassed both exempt and non-exempt tasks. The time she spent observing employees in connection with her "performance management activities" was exempt. *See* 29 C.F.R. § 541.108(e) (A "department manager . . . in a retail or service establishment who goes about the sales floor observing the work of sales personnel under his supervision to determine the effectiveness of their sales techniques, checking on the quality of customer service being given, or observing customer preferences and reactions . . . is performing work which is directly and closely related to his managerial and supervisory functions."). In contrast, Patel's work "assisting customers, putting out product, cleaning, ringing up customers," and "folding" did not qualify as exempt. *Id.* (activities such as "making sales to customers, replenishing stocks of merchandise on the sales floor, [and] removing merchandise from fitting rooms and returning to stock or shelves" are non-exempt).[10] Notably, California law does not allow the "concurrent performance" of exempt and non-exempt duties to be credited on the exempt side of an employee's ledger. *Heyen,* 216 Cal. App. 4th at 822. Accordingly, to the extent Patel was supervising employees while contemporaneously stocking shelves or manning cash registers, that time did not count as exempt. *Id.* ("the regulations require that each discrete task be separately classified as *either* 'exempt' or 'nonexempt' ") (emphasis in original).

Nike is not entitled to summary judgment on the question of whether Patel was primarily engaged in exempt work. Fundamentally, it has not demonstrated that Patel's time "out on the

---

[10] Patel testified that she was personally responsible, after 2012, for "going to the stockroom and getting [her] own product" to restock shelves in her department. Nike contends that this task was exempt because it involved "controlling the flow and distribution of materials or merchandise and supplies." 29 C.F.R. § 541.102(b). Subsection 108(e) of the same regulation, however, expressly provides that "replenishing stocks of merchandise on the sales floor" is a non-exempt function. Nike has not persuasively shown that Patel's time spent "manag[ing] the product flow" by personally restocking products was exempt.

floor" was predominantly made up of managerial tasks. Patel's isolated testimony that she spent 80 percent of her time "managing the operations of the store" is simply not dispositive evidence of the primacy of exempt tasks during her workday. A fair and comprehensive reading of the record as a whole presents a hazier picture of Patel's daily duties as an assistant head coach. For example, the deposition testimony leaves open the quantum of time Patel spent assisting customers, putting out product, cleaning, ringing up customers, greeting customers, and folding.[11] While Patel clearly engaged in a variety of supervisory and otherwise exempt work, Nike has not met its burden of demonstrating the absence of a genuine issue of material fact regarding whether Patel primarily functioned in an executive capacity. Accordingly, it is not entitled to judgment as a matter of law.[12]

## V. CONCLUSION

The motion for summary judgment is denied.

**IT IS SO ORDERED**.

Dated: May 27, 2015

RICHARD SEEBORG
United States District Judge

---

[11] According to Nike, Patel's recurring role as CEL consisted entirely of exempt supervisory duties. The record, however, leaves open the possibility that CELs, including Patel, were commonly engaged in non-exempt work such as assisting customers and completing sales. *See, e.g.,* Patel Dep. 122:15-17 (CEL focused on "driving the business with the employees and . . . the consumers").

[12] Along with her opposition to Nike's motion, Patel has submitted a declaration in which she seeks to clarify certain areas of her deposition testimony. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). A declaration may only be disregarded as a sham, however, if "the inconsistency between a party's deposition testimony and subsequent affidavit [is] clear and unambiguous." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009). Here, Patel's declaration, while not entitled to a great deal of weight, is not patently inconsistent with her deposition testimony.