**BLUMENTHAL, NORDREHAUG & BHOWMIK**
  Norman B. Blumenthal (State Bar #068687)
  Kyle R. Nordrehaug (State Bar #205975)
  Aparajit Bhowmik (State Bar #248066)
  Piya Mukherjee (State Bar #274217)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232
Firm Website: http://www.bamlawca.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYAL PATEL, an individual, on behalf of herself, on behalf of all persons similarly situated, and as the representative of the State of California,<br><br>    Plaintiff,<br><br>    v.<br><br>NIKE RETAIL SERVICES, INC., a Corporation; and DOES 1 through 50, inclusive,<br><br>    Defendant. | **CASE No. 3:14-CV-04781-RS**<br><br>Assigned to the Hon. Richard Seeborg<br><br>PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>DATE:  March 10, 2016<br>TIME:  1:30 P.M.<br>CTRM:  3<br><br>Complaint Filed: November 25, 2013 |

# TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  LEGAL STANDARD FOR MOTION FOR CLASS CERTIFICATION . . . . . 4

III.  PLAINTIFF SATISFIES THE COMMONALITY, PREDOMINANCE, AND MANAGEABILITY REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  Plaintiff Does Not Rely Solely on Defendant's Uniform Classification Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.  "Whether the Nature of the Tasks Require Independent Judgment or Discretion" Is A Predominant Common Question . . . . . . . . . . . . . . . . . . 7

    C.  Whether Defendant Can Satisfy the "Management" Prong of the Executive Exemption Is a Predominant Common Question . . . . . . . . . 10

    D.  A Predominant Common Question is Raised By the Question of Whether the Exemption Fails Because the "Managerial" Work Was Really the Same As Non-exempt Work Consisting of the Same Nature as That Performed by the Nonexempt Subordinates in the Shoe Store . . . . . . . . 12

    E.  The Class Action Is Manageable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    F.   Superiority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# **TABLE OF AUTHORITIES**

Cases:                                                                                            Pages:

*Abdullah v. U.S. Sec.*,
    731 F.3d 952 (9th Cir. 2013) .................................................. 5

*Ambrosia v. Cogent Communs., Inc.*,
    2016 U.S. Dist. LEXIS 242 (N.D. Cal. Jan. 4, 2016) ............... 5, 10, 15

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
    133 S. Ct. 1184 (2013). .......................................................... 9, 15

*Boyd v. Bank of Am. Corp.*,
    300 F.R.D. 431 (C.D. Cal. 2014) ...................... 3, 5, 6, 7, 10, 13, 14

*Campbell v. PricewaterhouseCoopers, LLP*,
    642 F.3d 820 (9th Cir. 2011) ................................................... 5

*Dobrosky v. Arthur J. Gallagher Serv. Co., LLC*,
    2014 U.S. Dist. LEXIS 106345 (C.D. Cal. July 30, 2014) ........... 1, 7, 14

*Gilstrap v. Synalloy Corp., Industrial Piping Supply Co. Div.*,
    409 F. Supp. 621 (M.D. La. 1976) ........................................... 12

*Greko v. Diesel U.S.A., Inc.*,
    277 F.R.D. 419 (N.D. Cal. 2011) .............................................. 7

*Heyen v. Safeway Inc.*,
    216 Cal. App. 4th 795 (Cal. App. 2d Dist. 2013) ....................... 2, 12

*Indergit v. Rite Aid Corp.*,
    293 F.R.D. 632 (S.D.N.Y. 2013) .............................................. 5

*Marlo v. United Parcel Serv., Inc.*,
    639 F.3d 942 (9th Cir. 2011) ................................................... 6

*Martinez v. Joe's Crab Shack Holdings*,
    231 Cal. App.4th 362 (2014) ................................................. 5, 15

*Moore v. All Star Auto Recycling, Inc.*,
    2013 U.S. Dist. LEXIS 20405 (E.D. Cal. Feb. 14, 2013) ............ 10

*Nelson v. Avon*,
    2015 U.S. Dist. LEXIS 51104 (N.D. Cal. Apr. 17, 2015) ........... 1, 2, 5

*Nordquist v. McGraw-Hill Broad. Co., Inc.*,
    32 Cal. App. 4th 555 (1995) .................................................... 4

*Rieve v. Coventry Health Care, Inc.*,
    870 F. Supp. 2d 856 (C.D. Cal. 2012) ...................................... 1, 4

*Soto v. Diakon Logistics (Del.), Inc.*,
　　2013 WL 4500693 (S.D. Cal. Aug. 21, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Stockwell v. City & County of San Francisco*,
　　749 F.3d 1107 (9th Cir. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8

*Wal-Mart Stores, Inc. v. Dukes*,
　　131 S. Ct. 2541 (U.S. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

<u>Statutes, Rules and Regulations:</u>

29 C.F.R. § 541.104 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

29 C.F.R. § 541.105(a)(2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R.§ 541.111 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

29 C.F.R. § 541.207 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

FRCP 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

<u>Secondary Sources</u>
"Memo to work martyrs: Long hours make you less productive,"
　　Bob Sullivan, CNBC, 26 Jan 2015,
　　http://www.cnbc.com/id/102363524#. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

PLAINTIFF'S REPLY IN SUPPORT OF CLASS CERTIFICATION
-iii-　　　　Case No.: 3:14-CV-04781

## I. INTRODUCTION

The only issues raised by Defendant in Opposition to Plaintiff's Motion for Class Certification are predominance and manageability. The other elements of class certification under Fed. R. Civ. Proc. 23(b)(3) of numerosity, ascertainability, adequacy, commonality, and superiority are not in dispute.

Defendant's predominance and manageability arguments are unavailing. Defendant fails to consider that the prongs of the administrative and executive exemptions are all in the conjunctive. Plaintiff, therefore, need only prove at trial that one prong does not apply to all Class Members to defeat the overtime exemption. *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 869 (C.D. Cal. 2012)("**Because the test is conjunctive, Plaintiff need only demonstrate that Defendants have not met their burden as to one part of the test**.").[1]

Plaintiff's trial plan here is to attack only certain prongs of the administrative and executive exemptions using only common facts that undisputedly apply to every member of this manageable class of only ninety-six (96) Class Members. Under this trial plan, the trial of common issues will predominate and trial of this case as a class action will be both manageable and superior to individual trials of these same predominant common issues subject to common proof.

As other District Courts have held in California, Plaintiff need not demonstrate predominance as to all of the prongs of the exemptions at issue for a misclassification class action to be certified. *See*, *e.g.*, *Dobrosky v. Arthur J. Gallagher Serv. Co., LLC*, 2014 U.S. Dist. LEXIS 106345 (C.D. Cal. July 30, 2014)("**even if Plaintiff was unable to present common proof on [the discretion prong], it would not necessarily defeat certification, as she has already presented common proof on two other elements of the exemption**."); *see also Nelson v. Avon Prods.*, 2015 U.S. Dist. LEXIS 51104 (N.D. Cal. Apr. 17, 2015)("**discretion and independent judgment, is susceptible to common**

---

[1]   Emphasis added unless otherwise stated.

PLAINTIFF'S REPLY IN SUPPORT OF CLASS CERTIFICATION
-1-                           Case No.: 3:14-CV-04781

**proof because of the theory on which Plaintiffs rely**.").

**The first predominant common question** simultaneously attacks both the executive and administrative exemption by focusing only on the "discretion and independent" judgment prong. *Dobrosky* and *Nelson*, cited above, followed the Supreme Court's directive that "even a single common question will do" in holding that predominance can be shown and certification granted of a trial plan that seeks to invalidate exemptions based only on this prong. *Nelson*, 2015 U.S. Dist. LEXIS 51104 at 16, *citing Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2556.[2]

**The second predominant common question** as to the executive exemption is whether, under Part 541.111(2001), the work is nonexempt because "it consists of work of the same nature as that performed by the nonexempt subordinates of the 'executive.'" *Heyen v. Safeway, Inc.*, 216 Cal. App. 4th 795, 822 (2013), quoting (§ 541.111(b)).

**Plaintiff's theory of the case here is that the exempt nature of the so-called "managerial" duties performed by the Class Members has been compromised by the Defendant's distribution of this work to both the Class Members and other employees in the store who were classified as non-exempt**.

Defendant's entire opposition to Plaintiff's theory is that Defendant believes that on the merits, "Plaintiff's argument is incorrect." (Def. Opp. 19:7-16) In making this argument, Defendant asks this Court to commit the "legal error of evaluating merits questions, rather than focusing on whether the questions presented, whether meritorious or not, were common to the members of the putative class." *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1013-14 (9th Cir. Cal. 2014).

As to the "**discretion**" test, admitted, company-wide standardization of the Class Members' job with routines, policies, and procedures can absolutely support a classwide trial to defeat both exemptions on the basis that there was no ability to exercise discretion

---

[2]  Petition for review of the class certification order in *Nelson* was denied by the Ninth Circuit. *See* Petition Denial, Exhibit 1 to Request for Judicial Notice.

1  and independent judgment "with respect to matters of significance" to the massive, billion
2  dollar conglomerate of the Nike enterprise.  To rule otherwise on this procedural motion
3  for class certification would constitute an erroneous merits ruling in contravention of clear
4  Ninth Circuit precedent.  *Stockwell*, 749 F.3d at 1013.

   Defendant may try to downplay the significance of these policies, but the law is
6  clear that such standardization weighs heavily in favor of certification.  *Boyd v. Bank of
7  Am. Corp.*, 300 F.R.D. 431, 443 (C.D. Cal. 2014).  Indeed, Defendant's own corporate,
8  classwide documents admit that the exact same tasks being performed by the Class
9  Members ("Assistant Head Coaches"), employees that were exempt from overtime wages,
10 were being performed by ("Coaches," "Leads," and "Specialists"), employees that were
11 non-exempt from overtime :

> **The following charts further outline the roles of each member of the Leadership team, in the areas of both performance management and operations**.

**PERFORMANCE MANAGEMENT**

| PAR | CFE | CORRECTIVE ACTION | HIRING | COACHING | TRAINING | |
|---|---|---|---|---|---|---|
| LEAD COACH | Entry and Review | Write and Deliver | Write and Deliver | Interview and Selection | Formal and In-the-Moment | Yes |
| ASSISTANT HEAD COACH | Entry and Review | Write and Deliver | Write and Deliver | Interview and Selection | Formal and In-the-Moment | Yes |
| COACH | Entry and Review | Write and Deliver | Write and Deliver | Interview and Input on Selection | Formal and In-the-Moment | Yes |
| LEAD | Entry | Assist with Write and Deliver | Input | Interview and Input on Selection | In-the-Moment | Yes |
| SPECIALIST | Entry | Assist with Write and Deliver | Input | Interview and Input on Selection | In-the-Moment | Yes |

(NIKE Playbook at NRS002880, Exhibit 11 to Bhowmik Cert. Decl. [Doc. No. 41-5]; Plaintiff's Reply Separate Statement, ¶¶ 1, 6-8, ("SS")).

PLAINTIFF'S REPLY IN SUPPORT OF CLASS CERTIFICATION
-3-    Case No.: 3:14-CV-04781

The chart above outlines the standardized tasks that Defendant claims are "managerial" as to the putative class member "Assistant Head Coaches." Plaintiff's attack on the "discretion and independent judgment" prong of both exemptions is that the so-called "managerial duties" did not involve "matters of significance" because the exact same tasks were also being performed by non-exempt "Coaches" and other non-exempt employees at the retail store level, with many of these tasks being performed by "Lead" and "Specialist" entry-level employees. (SS at ¶¶ 1, 3, 5-7, 10-13). The case can be tried as a class because individualized variances in the amount of time employees spent performing one task versus another does not impact the analysis.[3]

Class Certification must, therefore, respectfully be granted because under the standardized policies and procedures of Defendant, the fact-finder can certainly determine whether the "management" prong of the executive exemption and the "discretion" prong of both the executive and administrative exemptions were or were not met as predominant common issues based on common proof.

## II.  LEGAL STANDARD FOR MOTION FOR CLASS CERTIFICATION

"**Exemptions are narrowly construed against the employer and their application is limited to those employees plainly and unmistakably within their terms**." *Nordquist v. McGraw-Hill Broad. Co., Inc.*, 32 Cal. App. 4th 555, 562 (1995). To prevail on the claimed defense, Defendant must prove that each element of the administrative exemption applies. *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 869 (C.D. Cal. 2012)("Because the test is conjunctive, Plaintiff need only demonstrate that Defendants have not met their burden as to one part of the test.").

---

[3] Plaintiff intends to prove that this is nothing more than a run of the mill "wage theft" case. Plaintiff will prove that the reason the misclassification of the "Assistant Had Coaches" as exempt was to require them to be the designated employees to work the overtime hours when needed without pay so as to keep the labor costs within budget by eliminating any payment of overtime wages.

**For class certification purposes, Plaintiff need only show that just one element of the exemption can be negated through classwide proof. "[E]ven a single common question' will do."** *Wal-Mart*, 131 S.Ct. 2541 at 2556.

## III. PLAINTIFF SATISFIES THE COMMONALITY, PREDOMINANCE, AND MANAGEABILITY REQUIREMENTS

"[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec.*, 731 F.3d 952, 957 (9th Cir. 2013). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single significant question of law or fact.'" *Id*. at 957. Here, Plaintiffs identified several significant questions of law and fact that will generate common answers to dispositive, liability questions.

Class certification of one or more of these prongs of the administrative and executive exemptions are supported by numerous decisions by Courts across the Nation following *Dukes*. *Campbell v. PricewaterhouseCoopers, LLP*, 287 F.R.D. 615 (E.D. Cal. 2012)(common question is whether class members "**customarily and regularly exercise discretion and independent judgment**..."); *Ambrosia v. Cogent Communs., Inc.*, 2016 U.S. Dist. LEXIS 242, *31 (N.D. Cal. Jan. 4, 2016)(certification granted where class members are "**recruited and hired using the same job description**"); *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, *647 (S.D.N.Y. 2013)(same); *Boyd*, 300 F.R.D. 431 at 443 ("**independent judgment**" theory raises common questions); *Nelson*, 2015 U.S. Dist. LEXIS 51104,*33 ("**common issues predominate with regard to the exercise of discretion question because it turns on whether the nature of the tasks in which DSMs engage require independent judgment or discretion**."); *Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App.4th 362, 381 (2014)(order denying certification of executive exemption reversed where theory was managers "functioned consistently as utility workers, cross-trained in all tasks.")

In all of these cases, the defendants raised individualized differences as to ancillary facts that varied between Class Members. **The wisdom of these Courts, however, was to recognize that "individual issues will likely be present during class actions, but that such issues should not prevent class certification so long as they do not override the common question."** *Soto v. Diakon Logistics (Del.), Inc.*, 2013 WL 4500693, 18-19 (S.D. Cal. Aug. 21, 2013)(certifying class of allegedly misclassified independent contractors).

### A. Plaintiff Does Not Rely Solely on Defendant's Uniform Classification Policy

Plaintiff agrees that it is "improper for a court to certify a class based solely on the existence of a uniform exemption policy. *Marlo*, 639 F.3d at 948. Defendant, however, incorrectly characterizes Plaintiff's theory of liability as resting solely on the uniform exemption classification policy.

While Plaintiff has identified a uniform exemption policy, Plaintiff also satisfies Rule 23(b)(3) by proving many other factors supporting predominance in the form of centralized control and standardized policies Defendant placed over the class members' job. Following *Dukes*, the law is that in addition to the exemption policy,

> courts should look to "**whether the employer exercised some level of centralized control in the form of standardized hierarchy, standardized corporate policies and procedures governing employees**, uniform training programs, and other factors susceptible to common proof."

*Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 442 (C.D. Cal. 2014)

The *Boyd* court also noted that predominance can be established by other policies and procedures such as a standardized job description (*Id*. at 442) and "detailed guidelines to direct the conduct of [the class members]" (*Id*.). Defendant cannot dispute that both of these kinds of policies are evidenced here.

- Defendant admits Class Members' ""**[d]ecisions are guided by policies, procedures, and business plan, receives guidance and oversight from manager**." (JD, <u>Exhibit 6</u> to Bhowmik Cert. Decl., [Doc. No. 41-2]);

- Defendant admits "**Actions**" by Class Members "**impacting company image <u>require</u> management oversight and are constrained by policies**." (*Id*.);

- Defendant admits that "**our business processes and organizational structures are clearly aligned throughout all of Direct to Consumer, <u>regardless of concept, store size or geography</u>**. (Playbook, pg. NRS002847, <u>Exhibit 11</u> to Bhowmik Class Certification Declaration [Doc. No. 41-5]);

- Defendant admits to already establishing commonality given that "**Nike's core competencies <u>clearly outline what is expected of a Nike employee at any level and any location</u>**." (*Id.* at NRS0002849, <u>Exhibit 11</u> to Bhowmik Class Certification Declaration [Doc. No. 41-5]).

- Defendant admits the uniformity of the relevant facts by mandating that "**When consumers walk into any Nike store throughout the world they should expect to receive the same premium consumer experience, which is tailored to each individual**." (*Id.* at NRS0002851, <u>Exhibit 11</u> to Bhowmik Class Certification Declaration [Doc. No. 41-5])

All of these admissions of uniform commonality made by Defendant before the litigation are fundamentally inconsistent with the variance claimed by the creative lawyering in Defendant's opposition brief. As this court previously held in *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 427-28 (N.D. Cal. 2011):

> **[W]hether Diesel misclassified assistant store managers] in its California stores is not just a common question, it also predominates individual issues" where evidence included "a corporate-wide employee handbook" and centrally generated job descriptions.**

Defendant criticized the *Greko* opinion as outdated, but opinions that have been since issued on the subject are consistent with the opinion. *See Dobrosky*, 2014 U.S. Dist. LEXIS 106345, at *50 (*quoting Greko*, 277 F.R.D. at 428 *with approval*).

> In sum, **Plaintiffs have presented numerous common policies and procedures, which raise a great number of common questions**. Several individual inquiries still remain, such as whether any employee significantly deviated from the requirements set out by corporate guidelines and state law. *See Marlo*, 639 F.3d at 948 (holding that the fact that an employer expects an employee "to follow certain procedures or perform certain tasks" does not establish that they did). Nevertheless, after a "close look,**" the Court finds that "common questions predominate over individual ones**." *See Comcast*, 133 S. Ct. at 1432.

*Boyd*, 300 F.R.D. at 443.

### B.  "Whether the Nature of the Tasks Require Independent Judgment or Discretion" Is A Predominant Common Question

The most significant dispute concerns whether the job tasks of the Class Members, when viewed at the highest level of exercised discretion and independent judgment in their position, are exempt or non-exempt tasks.

> **[T]he exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct" with "the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance**.

29 C.F.R. § 541.207(a) (2002).

Courts must distinguish between discretion "and the use of skill in applying techniques, procedures, or specific standards. *Id*. § 541.207(b). "An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specific standards are met..., is not exercising discretion and independent judgment." *Id*. § 541.207(c)(1). Additionally, to meet this element, the employer must show that the employee's discretion and judgment is "'consistent,' or even 'customary and regular.'" In order to meet the burden, "the discretion and independent judgment exercised must be **real and substantial, that is, they must be exercised with respect to matters of consequence**." *Id*. § 541.207(d)(1).

Defendant's position is that "[s]ome AHC's testified that they consistently exercised independent judgment and discretion on significant issues, while other AHCs testified that they never made any decisions about anything." (Def. Opp. Pg. 20:18-19) The variances that Defendant argues exist would cause no change in the exemption analysis undertaken by the Court given Plaintiff's liability theory is that the uniform assigned tasks Defendant rendered all Class Members non-exempt, including those who in the opinion of Defendant exercised independent judgment and discretion. **There is nothing individualized about the analysis because under Plaintiff's trial plan, the perceived variances would only cause those who "never made any decisions" to be more non-exempt than those who Defendant argues were exempt**.

Importantly, Defendant's argument that "AHCs testified that they consistently exercised independent judgment and discretion" supports rather than defeats certification as the Ninth Circuit recently reiterated the Supreme Court's holding that, "a common contention need not be one that 'will be answered, on the merits, in favor of the class.'" *Stockwell*, 749 F.3d at 1112. The conclusory merits opinion cannot be accepted as true

at this stage as a defendant's argument that there is a "failure of proof as to an element of the plaintiffs' cause of action...is properly addressed at trial or in a ruling on a summary-judgment motion." *Amgen*, 133 S. Ct. at 1197.

Plaintiff's liability theory is that even Defendant's declarants who claim to have exercised discretion by deciding "to move the performance wear to the right side of the store" (Etherington Decl., ¶ 15, pg. 55 of Doc. No. 51-3) from the left were not exercising discretion and independent judgment as to matters of significance to Nike's retail enterprise.  (SS at ¶¶ 2-5). This theory can be tried by common evidence including the policies and procedures of the company, the uniformly low-level status of the employees in relation to the Head Coach, and the uniformly shared "managerial" duties between Class Members and non-exempt employees.  (SS at ¶¶ 1-13).

The applicable regulations provide that discretion and independent judgment is a term that applies "to the kinds of decisions normally made by persons who formulate or participate in the formulation of policy within their spheres of responsibility or who exercise authority within a wide range to commit their employer in substantial respects financially or otherwise." 29 C.F.R. §541.207(d)(2).  Plaintiff is perfectly comfortable with asking the trier of fact to opine whether the Class Members, using the maximum level of discretion possible, are performing tasks of significance to the Nike enterprise when they decide to move shoes from one end of the store to another or perform any of the other so-called "managerial" tasks that Defendant's declarants describe, which are also universally being performed by non-exempt employees. (SS at ¶¶ 1-13).

Defendant's contention that the uniform company policies and procedures do not limit discretion is just another merits argument that clearly weighs in favor of class certification. In making this contention, Defendant notably cites to summary judgment decisions such as *Taylor v. United Parcel Serv.*, 190 Cal. App. 4th 1001 )(2010). The error of this argument is that these summary judgment cases do not stand for the proposition that individualized issues predominate.

To the contrary, Defendant's citation to a summary judgment order crystallizes the predominant common questions that the trier of fact can and should adjudicate in this case on the merits following class certification, not as part of the class certification procedural ruling in this case. For example, the same error was made by the Defendant in *Boyd v. Bank of America*. The defendant there similarly offered the steadfast argument that the defendant's policies and procedures outlining the job could never defeat the defendant's claim that the exempt classified employees exercised discretion and independent judgment. At the class certification stage, the argument did not counsel against certification of the class. Instead, the opposite happened and the court there held that:

> Again, if the Court accepts LandSafe's assertion—that the primary duty of Residential Appraisers is uniformly characterized by independent judgment and discretion—then such a fact would weigh in favor of certification. It is true that such policies suggest that LandSafe might prevail on the merits, but such an inquiry is premature. [citation omitted] Rather, **these types of "standardized corporate policies and procedures governing employees" are evidence that class treatment is appropriate**.

*Boyd*., 300 F.R.D. at 443.

Here, Plaintiff has similarly exceeded by a far margin the burden of showing commonality of Defendant's standardization of the Class Members' job. These documents all drafted and disseminated well outside the sphere of a class litigation evidence a clear commitment to standardization, not variance. (SS ¶2).

Company procedures delineating the rules to follow in a job are, by law, evidence that a trier of fact may consider to rebut the claim of "discretion and independent judgment." *See*, *e.g.*, *Moore v. All Star Auto Recycling, Inc.*, 2013 U.S. Dist. LEXIS 20405 at *7 and *19 (E.D. Cal. Feb. 14, 2013)(triable issue raised as to "discretion and independent judgment" given that the defendant "set the procedures for running the Redding yard."); *Ambrosia v. Cogent Communs., Inc.*,, 2016 U.S. Dist. LEXIS 242, *31 (N.D. Cal. Jan. 4, 2016)(certification granted where "there is a sufficient possibility that corporate policies exist to transform the individualized issues into common ones.").

### C. <u>Whether Defendant Can Satisfy the "Management" Prong of the Executive Exemption Is a Predominant Common Question</u>

Under the Management prong of the Executive Exemption:

> In order to be properly classify an individual as an executive **he must be <u>more than merely a supervisor</u> of two or more employees**...

(29 C.F.R. § 541.104(a) (2001)).

Plaintiff's common liability theory is that even at the highest level of the job as described by Defendant's declarants, were not more than "merely a supervisor." As the common evidence shows, up to March of 2015, "**Assistant** Head Coaches" were not tied to their departments, but were drawn from them into a pool of other employees including non-exempt "Coaches" and "Specialists" away from any allegedly recognized unit.

In the Zone Charts, the Assistant Head Coaches were designated **mere participants** in the Leadership team alongside a pool of other supervisors, including **non-exempt "Coach"** employees and **non-exempt "Specialist"** employees. (30b6, <u>Exh. 3</u> at 120:11-123:21 to Bhowmik Reply Decl. filed herewith "Reply Decl."). The Assistant Head Coaches drawn from this pool rotated in and out of a CEL role, an MOD, role, or supervision of employees who were selling the men's footwear product in the store. The CEL, whether that was an Assistant Head Coach or a non-exempt Coach or Specialist, was responsible for walking the sales floor in constant motion ('Figure-eight') and observing the performance of the non-exempt employees. (Daily CEL Roles, <u>Exhibit 14</u> to Bhowmik Cert. Decl., at NRS001623, [Doc. No. 41-7]; SS at ¶¶ 6-8, 12-13).

The AHCs were also drawn from this pool to act as MOD to assist with minutiae such as "employee purchases or employee checkouts or escalated consumer situations." (30b6 100:11-18, <u>Exhibit 3</u> to Bhowmik Reply Decl.). 29 C.F.R. § 541.105(a)(2001), however, states: "**<u>Questions</u> arise principally in cases involving supervisors who...have different subordinates at different times**." The predominant common question is whether the management prong can be satisfied under this regulation which also specifies:

> **It <u>cannot</u> be said,** however, **that a supervisor drawn from a pool of supervisors** who supervises employees assigned to him from a pool and who is assigned a job or series of jobs from day to day or week to week **has the status of an executive. Such an employee <u>is not *in charge*</u> of a recognized unit with a continuing function.**

(29 C.F.R. § 541.104(f)).

Pursuant to Defendant's classwide policies, the Assistant Head Coaches up until March of 2015 were one of several supervisors (many of whom were non-exempt) who rotated between supervising employees. Under the regulation set forth above, a predominant triable issue is raised as to whether they were actually ever "in charge" given that any supervision performed was in and out of a rotating pool of supervisors.

### D. A Predominant Common Question is Raised By the Question of Whether the Exemption Fails Because the "Managerial" Work Was Really the Same As Non-exempt Work Consisting of the Same Nature as That Performed by the Nonexempt Subordinates in the Shoe Store

Part 541.111 (2001) explains that **nonexempt work "is easily identifiable** where, as in the usual case, it consists of work of the same nature as that performed by the nonexempt subordinates of the 'executive.'" *Heyen*, 216 Cal. App. 4th at 822. As explained above, the pool of supervisors were drawn from (up to 3/2015) employees who were classified as non-exempt. Accordingly, all this work should be "**easily identifiable**" as non-exempt work by the trier of fact as to the entire class.

This language was addressed in *Gilstrap v. Synalloy Corp., Industrial Piping Supply Co. Div.*, 409 F. Supp. 621, 624 (M.D. La. 1976). Although the court in *Gilstrap* acknowledged that the plaintiff there supervised two (2) employees, the court noted,

> **They were a "mere collection" of individuals who might be available to perform specific tasks at plaintiff's direction. There was no recognized department which plaintiff had the duty to manage**. Consequently, plaintiff does not satisfy all the requirements for the executive exemption.

*Id*.

Here, Defendant contends that the Assistant Head Coach job when performed at the highest level is exempt because these employees perform the supervisory tasks of Performance Action Reports ("PAR"), Coaching for Excellence ("CFE"), Corrective Action, Hiring, Coaching and Training. **These common tasks, however, were similarly performed by non-exempt personnel**. In construing the Regulations and *Heyen* in the light most favorable to Plaintiff, the trier of fact may answer the predominant common question whether these exempt and non-exempt employees were all performing non-

exemption "managerial" duties so as to all be non-exempt employees.

### E. The Class Action Is Manageable

Defendant's "sky is falling" argument against certification of misclassification cases is belied by similar cases that were certified and adjudicated in an efficient and manageable fashion. *Boyd v. Bank of America* is an example of this. There, the court certified a wage and hour misclassification class action where the plaintiffs similarly alleged that they were misclassified under the administrative exemption. The order granting class certification has been cited to numerous times above.

After hearing the parties' motions for summary judgment, the Court in *Boyd* manageably adjudicated similar predominant common questions, including the hotly contested topic of whether the employees exercised "discretion or independent judgment." Notably, the case did not devolve into mini-trials, individual inquiries, or decertification of the class. Bank of America offered the same argument put forth by Defendant here that policies and rules "leave room for [class members] to exercise significant discretion and independent judgment." *Id*. at 12. Despite these "variations," the Court held that the class members do not exercise discretion as to significant matters because:

> **they do not have the authority to formulate, affect, interpret, or implement management policies or operating practices**;
>
> they do not carry out "**major**" assignments in conducting the operations of the business;
>
> they do not have the authority to commit the employer in matters that have **significant financial impact**;
>
> while Appraisers may have to consider issues beyond established guidelines, they **generally do not have the authority to "waive" or "deviate from" established policies and procedures without prior approval**;
>
> they **do not have the authority to negotiate and bind the company on significant matters**;
>
> they **do not provide consultation or expert advice** to management;
>
> they **are not involved in planning long- or short-term business objectives**;
>
> they **do not investigate and resolve matters of significance [62]** on behalf of management; and

they **do not represent the company in handling complaints, arbitrating disputes or resolving grievances**.

*Boyd v. Bank of Am.*, 2015 U.S. Dist. LEXIS 78041, *61-62 (C.D. Cal. May 6, 2015).

**The trier of fact here can similarly find that at the retail store level at the bottom of the Nike juggernaut, moving the shoes from one side of the store or cheerleading and coaching alongside non-exempt "Coaches" who perform the same tasks is not discretionary matters of significance to the enterprise**. (SS at ¶¶ 1-13).

Similarly, in *Dobrosky v. Gallagher*, many predominant common questions were resolved regarding prongs such as "discretion and independent judgment" at the summary judgment stage post class certification. Although there were some disputed issues reserved for trial, the case is also notable because the efficiencies of the class action device are clearly on display. Instead of risking a slew of inconsistent rulings regarding the "discretion" exercised by those class members, the court was able to efficiently adjudicate the issue on a classwide basis once and for all time based on the admissions of that Defendant's PMK and the standardized corporate policies that described the job. *Dobrosky*, 2015 U.S. Dist. LEXIS 68252, at *57 (for a certified class of over 200 employees, the court held that "**a reasonable jury could conclude that any independent judgment exercised by Adjusters related to matters of little significance**.").

### F.  Superiority

One of the gravest harms to the working people of the United States is the unlimited workweek. The injuries caused by these hundreds of hours of "free labor" are suffered not only by the employees, but also the employers.

> **So-called "work martyrs" give hundreds of hours in free labor to their employers every year, encouraged by always-on gadgets, work through nights, weekends, and vacations**. Trading sleep or fun for unpaid work is obviously a bad deal for employees, but there's a growing body of evidence that even apparently "free" labor might not be a good deal for employers, either.

("Memo to work martyrs: Long hours make you less productive," Bob Sullivan, CNBC, 26 Jan 2015, http://www.cnbc.com/id/102363524#.).

The class action device is undoubtedly the superior method of effecting change to

these harmful working conditions. California has been steadfast in embracing class actions as the preferred means of resolving such disputes.

> **By refocusing its analysis on the policies and practices of the employer and the effect those policies and practices have on the putative class, as well as narrowing the class if appropriate, the trial court may in fact find class analysis a more efficient and effective means of resolving plaintiffs' overtime claim**.

*Martinez*, 231 Cal. App. 4th at 384.

Other factors indicating superiority are that (a) no class member seeks individual control of their case, (2) there is an absence of parallel litigation, (3) and there is a well-recognized fear of retaliation of employees. *Ambrosia*, 2016 U.S. Dist. LEXIS 242 at *35. Further, the relevant policies and procedures applied uniformly to all members of the putative class.  As such, in this case there is no doubt that "class treatment is likely to reduce litigation costs and promote efficiency relative to trying each case individually." *Ambrosia* at *35.

## IV.  CONCLUSION

For the foregoing reasons, the class claims "will prevail or fail in unison," as required by Rule 23(b)(3). *See Amgen Inc.*, 133 S. Ct. at 1191. For these reasons, Plaintiff respectfully submits that Rules 23(a) and (b)(3) are satisfied and this action should proceed as a class action.

Respectfully submitted,

Dated: February 5, 2016         BLUMENTHAL, NORDREHAUG & BHOWMIK

By:   */s/*
      Norman B. Blumenthal
      Aparajit Bhowmik
      Attorney for Plaintiff