SEYFARTH SHAW LLP
Jon D. Meer (SBN 144389)
E-mail: jmeer@seyfarth.com
Sheryl L. Skibbe (SBN 199441)
E-mail: sskibbe@seyfarth.com
Casey J.T. McCoy (SBN 229106)
E-mail: cjtmccoy@seyfarth.com
Maya Harel (SBN 291990)
E-mail: mharel@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendant
NIKE RETAIL SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYAL PATEL, an individual, on behalf of herself, on behalf of all persons similarly situated, and as the representative of the State of California,<br><br>Plaintiff,<br><br>v.<br><br>NIKE RETAIL SERVICES, INC., a Corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No. 3:14-cv-04781-RS<br><br>Assigned to the Hon. Richard Seeborg<br><br>**DEFENDANT NIKE RETAIL SERVICES, INC.'S OBJECTIONS TO PLAINTIFF'S EVIDENCE IN SUPPORT OF HER REPLY MEMORANDUM RE MOTION FOR CLASS CERTIFICATION**<br><br>DATE:    March 24, 2016<br>TIME:    1:30 p.m.<br>CTRM:    3<br><br>Complaint Filed:    November 25, 2013 |

1   Defendant Nike Retail Services, Inc. ("Defendant"), hereby submits the following Objections to the Evidence submitted by Plaintiff Payal Patel ("Plaintiff") in support of her Reply Memorandum regarding her Motion for Class Certification. Defendant requests that the Court consider the additional excerpts of deposition testimony submitted by Defendant, or alternatively, exclude and/or disregard the evidence submitted by Plaintiff in support of her reply memorandum as set forth below:

## I.   GENERAL OBJECTIONS

Federal Rule of Evidence Rule 106 states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." As the notes of the Advisory Committee on Rule 106 explain: "The rule is an expression of the rule of completeness. . . . The rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial." *In re Chase Bank USA, N.A. CHECK LOAN Contract Litig.*, 274 F.R.D. 286, 289 n.1 (N.D. Cal. 2011) (granting defendant's administrative motion to file a supplemental declaration with excerpts from deposition transcripts "[b]ecause the additional excerpts provide context for the excerpts on which plaintiffs rely"). "Under this doctrine of completeness, a second writing may be required to be read if it is necessary to: (1) explain the admitted portion; (2) place the admitted portion in context; (3) avoid misleading the trier of fact; or (4) insure a fair and impartial understanding." Federal Trial Handbook Civil § 50:3 (4th ed.).

In support of her reply memorandum, Plaintiff submitted deposition testimony from the depositions of eleven of Defendant's fifteen declarants.[1] However, the deposition testimony submitted does not provide complete testimony, such that the Court may be left with a mistaken perception of the evidence. Plaintiff's reply papers and separate statement of evidence submitted in support thereof mischaracterize the testimony provided by Defendant's declarants. Defendant seeks only to provide a more complete record on which the Court can decide the issues presented in Plaintiff's Motion.

---

[1] Although Plaintiff also deposed Defendant's declarants Michael Ruybal and Brian Aquino, Plaintiff did not submit any evidence from their depositions.

1
DEFENDANT'S OBJECTIONS TO PLAINTIFF'S EVIDENCE IN SUPPORT OF HER REPLY;
CASE NO. 3:14-CV-04781-RS

## II. SPECIFIC OBJECTIONS TO PLAINTIFF'S SEPARATE STATEMENT OF EVIDENCE

**1. The tasks of the AHCs and Non-exempt employees are uniformly standardized.**

| Testimony Offered by Plaintiff | Grounds for Objection |
|---|---|
| Ernest Depo., 50:5-52:9 (confirming uniformity of tasks performed by AHCs and non-exempt Coaches, Leads and Specialists) | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Earnest Dep., 69:1-70:5, 70:10-71:21; 74:1-75:1.[2]  Earnest testified that the "touch basis that coaches had with athletes" were "a lot more basic" than "the touch basis [AHCs] had with coaches," and "much more quick and to the point."  Earnest also testified that a coach "could not write an issue of final warning." |
| Etherington Depo., 32:24-35:23, 38:18-25 (confirming uniformity of tasks performed by AHCs and non-exempt Coaches, Leads and Specialists) | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Etherington Dep., 33:9-13, 23-34:1; 38:12-15.  Etherington testified that she, as AHC, was solely "responsible for writing and delivering coaching for excellence forms," "corrective actions," and "formal coaching." |
| Krieger Depo., 26:12-22 (employee daily and weekly schedules could you [sic] completed by all members of leadership team including non-exempt coaches, leads and specialists). | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Krieger Dep., 25:9-21.  Krieger testified that the Operations AHC would prepare the "team schedule" and Krieger would "manually edit" the schedule for her team. |

**2. The AHCs are uniformly required to follow Nike policies.**

| | |
|---|---|
| Foss Depo., 61:2-10<br><br>    Q. Okay.  And that's not your job to draft [Nike] policies?<br><br>    A: It's to follow them.  Yeah. | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Foss Dep., 61:13-24; 62:15-22; 63:2-6.  Foss testified that, while required to follow Nike policies, the policies "[do not] eliminate [his] ability to make decisions" or exercise discretion regarding training, disciplining and evaluating employees. |
| Gamez Depo., 19:7-16<br><br>    Q. Okay.  Do you [as a Head Coach] | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106). |

---

[2] All deposition testimony cited is attached to the concurrently filed Declaration of Maya Harel.

| | |
|---|---|
| expect [Assistant Head Coaches] to make any decisions with respect to [corporate product placement] directives or the product placement in response to those directives?<br><br>A. I would expect them to follow the directive. | **Supplemental Testimony:** Gamez Dep., 42:12-43:6, 47:19-48:18. Gamez testified that she "empower[s]" AHCs "to make decisions on their own," including coaching employees, and testified that she would "absolutely" have "[AHCs] be involved in decision making." Gamez also testified that she never "discipline[d] an [AHC] for deviating from the [Nike] directive." |

3.   **The "decisions" which AHCs had the authority to make did not impact "matters of significance" for Nike.**

| | |
|---|---|
| Foss Depo., 63:11-18 (an example of a decision Foss made was whether to disciple or coach an employee who had his or her cell phone with him or her on the sales floor) | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Foss Dep., 62:15-22; 63:2-6; 64:15-19; 65:12-24. Foss testified that he made decisions regarding training, disciplining and evaluating employees; dealing with "customer complaints"; and labor staffing. |
| Etherington Depo., 13:20-14:7, 15:16-16:2, 44:6-13 (explaining the decisions she made an AHC: "If I wanted to place product in a different place, if I wanted to move it to a more visible place, I had kind of all these decisions and as long as I had the numbers to back them up, I was allowed to make." Etherington, however, was required to notify the Head Coach and District Talent Presentation Manager and explain "how it was impacting the consumer" and send pictures for approval if the product placement differed from what was set forth in Nike's standard initiative. If Etherington's superiors wanted product placement changed, she was required to make the requested change). | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Etherington Dep., 33:9-13, 23-34:1; 38:12-15. Etherington testified that she, as AHC, was solely "responsible for writing and delivering coaching for excellence forms," "corrective actions," and "formal coaching."<br><br>*See also* Etherington Dep., 66:3-13 (final decision-making authority to terminate employees); Etherington Dep., 14:16-15:2 (made decisions that go "against [Nike] directives"); Etherington Dep., 17:12-17 ("responsible for determining what products would come into the store"); Etherington Dep., 42:20-24 ("authority to exceed payroll hours" without prior authorization). |
| Gamez Depo., 17:23:20:17 (Gamez, a Head Coach, stated that AHCs make decisions regarding merchandising and product flow. Gamez gave an example of a merchandising decision which AHCs were expected to make as "fill[ing] a bin [with a product selling out to make it] "still look presentable". She provided another example of a decision which AHCs made regarding merchandising as "they can make the decision to either keep [product] in the bin and let it sell through there. They can make a decision to take it out of the bin and move it to what we call a hash | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Gamez Dep., 42:12-43:6; 38:15-39:3, 10-40:4; 17:1-22. Gamez testified that she "empower[s]" AHCs "to make decisions on their own," including coaching employees. Gamez also testified that AHCs would be involved in "recruiting"; "every aspect of corrective action" of employees, including "recommend[ing] … corrective action"; and "run[ning] the |

| | |
|---|---|
| wall where it is a miscellaneous product."). | business," including "make decisions in their department … making merchandising decisions, product flow decisions … and giving regular consistent feedback to their team to grow and develop." |

**4.    The Assistant Head Coaches uniformly do not have discretion to impact store sales or revenue.**

| | |
|---|---|
| Alpuche Depo., 25:8-18 (confirming that AHCs have no authority to impact the product or apparel which is provided to the store as "corporate decided because it was a plan that was put in place, like, a year before it actually arrives at the store."). | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Alpuche Dep., 15:13-16:14; 21:18-22:4. Alpuche testified that he would need to take the Nike directives and "adapt" them to his store, and would commonly make visual merchandising decisions, contrary to corporate recommendations, that were "better" for the consumer. |

**8.    Nike expected store management to be a collective job duty performed by non-exempt Leads, Specialists, and Coaches, as we as [sic] Exempt Assistant Head Coaches.**

| | |
|---|---|
| Alpuche Depo., Exh 5, 18:8-22<br><br>    Q. Okay. When you were just providing your testimony, you were using the term "we". Were you referring to you and any other particular people?<br><br>    A. Oh, I use the term "we" a lot because I have a team mentality, and that's kind of like, I don't know, Nike's – Like, when you are a part of Nike, like, I felt like I was a part of a team.· So it was never my decision. I like to collaborate with my partners, whether it's my visual coaches, my Head Coach, the other assistants. I like to take everyone's feedback and implement changes, and that's why you'll hear me say "we" a lot. | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Alpuche Dep., 8:3-7; 17:10-18:22. Alpuche testified that he, visual coaches, the Head Coach, and other assistants would "collaborate" with respect to "visual merchandising." Alpuche testified that he was also individually "responsible for the visual merchandising."<br><br>Several other aspects of store management were the sole duty of the AHCs. *See* Alpuche Dep., 57:22-58:13 ("[Y]ou make decisions to run the business … Everything it takes to run a business, … product presentation side, opening up … driving the business … increase sales … and train and develop your athletes"). |
| Shurin Depo., Exh. 14, 35:9-19 (management of the employees is a team effort, including non-exempt coaches and specialists, who all worked together cooperatively "as a team...So we definitely worked together.") | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Shurin Dep., 12:2-5; 35:4-19. Shurin testified that she spent approximately "80 percent" of her time as an AHC "managing store operations." Shurin also testified that management of the store was cooperative with respect to "manag[ing] lunch breaks." |

| | |
|---|---|
| Krieger Depo., Exh 15, 37:13-23 (confirming that in Krieger's absence from the floor where she primarily worked, the coach or specialist will supervise the floor). | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Krieger Dep., 36:14-18; 37:13-23.  Krieger testified that a coach or specialist "might" do more coaching or supervising while she was "on different floors," but that ultimately Krieger "was always in charge of [her] department." |

**12.   The Assistant Head Coaches Uniformly Shared Standardized CEL roles with Nonexempt Employees.**

| | |
|---|---|
| Chavez Depo, Exh 6, 15:8-11 (confirming that non-exempt Coaches and Specialists participate in the "Consumer Experience Leader Daily Rotation.") | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Chavez Dep., 15:8-11; 65:8-13.  Chavez testified that specialists, coaches, AHCs, and HCs "participated" in the CEL daily rotation, but did not testify that AHCs "uniformly shared standardized CEL roles with non-exempt employees."  Chavez also testified that when he "spent some time on the CEL duties, the type of management task that [he] [was] responsible for, no one took over those tasks." |
| Pocasangre Depo., Exh 11, 31:25-32:7 (confirming that non-exempt leads and coaches, as well as exempt AHCs participate in the daily CEL rotation). | **Evidentiary Objection:** Misstates testimony, incomplete testimony (FRE Rule 106).<br><br>**Supplemental Testimony:** Pocasangre Dep., 31:25-32:7.  Pocasangre testified that leads, coaches, AHCs, and HCs "participate" in the "CEL rotation," but did not testify that AHCs "uniformly shared standardized CEL roles with non-exempt employees." |

DATED: February 12, 2016                    SEYFARTH SHAW LLP

By:   */s/ Maya Harel*
      Jon D. Meer
      Sheryl L. Skibbe
      Casey J.T. McCoy
      Maya Harel
Attorneys for Defendant
NIKE RETAIL SERVICES, INC.