UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAYAL PATEL,

             Plaintiff,

    v.

NIKE RETAIL SERVICES, INC.,

             Defendant.

Case No. 14-cv-04781-RS

**ORDER GRANTING APPROVAL OF SETTLEMENT OF PAYAL PATEL'S PAGA CLAIM**

## I. INTRODUCTION

This suit involves a dispute over the labor practices of Defendant Nike Retail Services, Inc. ("Nike") with regard to its employment of "assistant head coaches" ("AHC"). In November 2013, Plaintiff Payal Patel filed suit against Nike in Alameda County Superior Court for violating various provisions of California's wage and hour statutes, including a claim for civil penalties under the Private Attorneys General Act ("PAGA"). Nike then removed the action to federal court in October 2014. Patel's motion for class certification was subsequently denied in 2016. Patel and Nike now jointly seek approval of a settlement agreement resolving her individual claims and her representative PAGA claim. (Dkt. 138.) This proposed settlement can be evaluated without oral argument pursuant to Local Rule 7-1(b). For the reasons explained below, approval is granted.

## II. BACKGROUND

The full facts of this case have been set forth in this Court's prior orders and need not be repeated here. For roughly three years, Patel was employed as an "assistant head coach" ("AHC")

United States District Court
Northern District of California

1    of a clearance store operated by Nike.  Nike classified Patel as exempt from overtime pay and

2    other benefits, a move Patel contends violates various provisions of California's wage and hour

3    statutes.  40 aggrieved employees are covered by the PAGA action.  (Dkt. 138, Ex. A.)  Patel

4    originally brought suit in Alameda County Superior Court in November 2013, which was

5    subsequently removed to federal court by Nike in October 2014.  Patel's motion for class

6    certification was denied in March of 2016 because she failed to show how any of her

7    misclassification theories could be established with common proof.  Subsequently, Nike twice

8    unsuccessfully moved to strike Patel's allegation in support of her representative PAGA claim, or

9    alternatively, for judgment on the pleadings.

10          On January 10, 2019, the parties participated in a settlement conference with a Magistrate

11   Judge, at which they reached an agreement to settle the claims in this suit.  On April 11, 2019, the

12   parties submitted a joint stipulation requesting approval of the PAGA settlement and dismissal of

13   Patel's individual and PAGA claims.  (Dkt. 138.)  In the settlement, Nike agrees to pay a total of

14   $185,000 (the "Gross Settlement Amount").  Of this amount, $80,000 would be paid to Patel's

15   counsel as attorneys' fees with $60,000 in litigation costs.  Additionally, $20,000 would be paid to

16   Patel to resolve her individual claims.  Further, $19,739 would be allocated to settlement of the

17   PAGA claim, with 75% ($14,804.25) to be paid as a Labor Code section 558 payment to the

18   aggrieved employees as part of their individual PAGA payments, and 25% ($4,934.75) to be paid

19   as a Labor Code section 2699 payment, with 75% ($3,701.06) of this amount being paid to the

20   Labor Workforce Development Agency ("LWDA") and 25% ($1,233.69) being paid to the

21   aggrieved employees as part of their individual PAGA payments.  Each individual PAGA

22   payment is to be based on the number of pay periods attributed and apportioned to each aggrieved

23   employee during the PAGA period (as determined by Patel's expert, Eric Lietzow) as a percentage

24   of the total pay periods attributed to all aggrieved employees during that period.  Finally, $5,261 is

25   to be paid to Simpluris, Inc. for administering the settlement.  In the event the actual cost to

26   administer the settlement is less, the difference will be added to the PAGA payment.  If the actual

27   expenses exceed the allocation, those expenses are to be paid from the Gross Settlement Amount.

28

1    The parties were ordered to submit a joint supplemental brief explaining why their PAGA

2    settlement comports with the current case law rubric analyzing the fairness, reasonableness, and

3    adequacy of PAGA settlements.  (Dkt. 139.)

4                                   **III.  LEGAL STANDARD**

5           A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law

6    enforcement agencies."  *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).  Accordingly, a

7    judgment in a PAGA action binds not only the plaintiff, but also the government and nonparty

8    aggrieved employees.  *Id.* at 985; *see also Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 380

9    (2014).  Under PAGA, a trial court must review and approve any settlement of PAGA claims.

10   Cal. Lab. Code § 2699(*l*)(2).[1]  Additionally, the proposed settlement must be submitted

11   simultaneously to the California Labor and Workforce Development Agency.  *Id.*  However,

12   PAGA does not establish a clear standard for evaluating PAGA settlements.  *Ramirez v. Benito*

13   *Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017).

14   Despite the lack of guidance, courts have been appropriately wary of plaintiffs using a PAGA

15   claim as a "bargaining chip" without due consideration of the public interest and the rights of other

16   aggrieved individuals.  *O'Connor v. Uber Techs. Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal.

17   2016).

18          Accordingly, certain courts have been willing to approve PAGA settlements only if (1) the

19   statutory requirements set forth by PAGA have been satisfied, and (2) the settlement agreement is

20   fair, reasonable, and adequate in view of PAGA's public policy goals.  *See Rincon v. West Coast*

21   *Tomato Growers, LLC.*, No. 13-CV-2473-JLS, 2018 WL 828104, at *2 (S.D. Cal. Feb. 12, 2018);

22   *Gutilla v. Aerotek, Inc.*, No. 15-CV-00191-DAD-BAM, 2017 WL 2729864, at *3 (E.D. Cal.

23

24   ---
[1] Although the current subsection appears only to apply to cases filed on or after July 1, 2016, the
25   prior version of § 2699(*l*) called for court approval of penalties sought as part of a proposed
     settlement.  *See* 2004 Cal. Legis. Serv. Ch. 221 (S.B. 1809) (WEST) § 3.  While PAGA requires
26   court approval of any settlement of PAGA claims, court approval is not required to settle Patel's
     individual non-PAGA claims.  Accordingly, only settlement provisions related to Patel's PAGA
27   claim or her request for attorneys' fees will be discussed in this order.

28                                                    ORDER APPROVING PAGA SETTLEMENT
                                                      CASE NO. 14-cv-04781-RS

March 22, 2017). As part of this analysis, these courts have evaluated proposed PAGA

settlements under the relevant factors from *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

Cir. 1998). *Rincon*, 2018 WL 828104, at \*2. As a district court in the Southern District of

California noted, the *Hanlon* factors are designed to determine the fairness of a settlement and

consequently are useful in evaluating PAGA settlements. *Rincon*, 2018 WL 828104, at \*2. As

these cases prove persuasive, the PAGA settlement agreement between Patel and Nike will be

evaluated accordingly.

Of the *Hanlon* factors, the following are relevant to evaluating the PAGA settlement: (1)

the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

litigation; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage

of the proceedings; (5) the presence of government participation; and (6) the expertise and views

of counsel. These factors will be evaluated in light of PAGA's public policy goals of "benefit[ing]

the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor

Code provisions, and deterring noncompliance." *O'Connor*, 201 F. Supp. 3d at 1132-33.

## IV. DISCUSSION

### A. Statutory Requirements

Patel satisfied the initial notice requirement prior to filing the PAGA claim. As alleged in

the Complaint, Patel gave the required statutory notice on September 24, 2013 to the LWDA and

Nike before filing the PAGA action. (*See* Compl. ¶ 97 & Ex. 1 (Dkt. 2-1).)[2] Further, Patel waited

longer than the then-statutory waiting period of 33 days of the postmark date of the written notice

if the LWDA did not provide a response.[3] (*Id.*) Finally, although the current PAGA statute does

not appear to require any written notice to the LWDA regarding proposed settlements of PAGA

---

[2] At the time, the statute required only written notice by certified mail to both the LWDA and the employer. *See* 2004 Cal. Legis. Serv. Ch. 221 (S.B. 1809) (WEST) § 4.

[3] The letter to the LWDA was postmarked September 20, 2013; Nike's was postmarked September 26, 2013. The Complaint was dated November 21, 2013.

1   claims filed before July 2016,[4] the parties served the LWDA with the Joint Stipulation which

2   included the settlement agreement via the LWDA's online process.  (Dkt. 141.)  Patel's counsel

3   represents the LWDA has not indicated any response or opposition to the proposed PAGA

4   settlement.  (Nordrehaug Decl. ¶ 2.)  Therefore, the analysis can proceed to consider whether the

5   settlement agreement is fair, reasonable, and adequate in view of PAGA's public policy goals.

6           **B.  Fairness, Reasonableness, and Adequacy of PAGA Settlement**

7           The balance of the *Hanlon* factors favors approving the PAGA settlement because the

8   agreement is fair, reasonable, and adequate in light of PAGA's public policy objectives.

9           *1.  Strength of Patel's Case*

10          In general, legal uncertainty favors approval of a settlement.  *Browning v. Yahoo! Inc.*, No.

11  C04-01463 HRL, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007).  Here, Patel would be

12  required to prove at trial each of the underlying Labor Code violations as to each of the 40

13  allegedly aggrieved employees in order to seek penalties under PAGA.  *See Cardenas v. McLane*

14  *Foodservice, Inc.*, No. SACV 10-473 DOC (FFMx), 2011 WL 379413, at *3 (C.D. Cal. Jan. 31,

15  2011) ("Given the statutory language [of PAGA], a plaintiff cannot recover on behalf of

16  individuals whom the plaintiff has not proven suffered a violation of the Labor Code by the

17  defendant.").  The strength of each aggrieved employees' PAGA claim may vary.  Moreover, even

18  if Patel prevailed, Patel may not recover all of the civil penalties sought.  A court may reduce the

19  penalty when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or

20  confiscatory."  Cal. Lab. Code. § 2699(e)(2); *see also Fleming v. Covidien, Inc.*, No. ED CV 10-

21  01487 RGK (OPx), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011) (finding the maximum

22  PAGA penalties "unjust" because the employees had suffered no injuries and reducing the

23  penalties by over 80%).  Therefore, this factor favors approving the settlement.

24

25  _____

26  [4] California Labor Code section 2699(*l*)(2) states that, for cases filed on or after July 1, 2016,
    "[t]he superior court shall review and approve any settlement of any civil action filed pursuant to
    this part.  The proposed settlement shall be submitted to the [LWDA] at the same time that it is
27  submitted to the court."

28                                                          ORDER APPROVING PAGA SETTLEMENT
                                                            CASE NO. 14-cv-04781-RS

1          *2. Risk, Expense, Complexity, and Likely Duration of Further Litigation*

2          For similar reasons, the need to demonstrate all 40 aggrieved employees' entitlement to a

3   PAGA award threatens a risky, expensive, and complex trial that would extend the duration of the

4   lawsuit.  Additionally, Patel risks an adverse judgment which could result in either a diminished

5   recovery or no recovery at all.  Finally, Nike risks the potential for a judgment levying a

6   significantly higher fine and attorneys' fee award than that proposed in the settlement agreement.

7   Thus, this factor also favors approving the settlement.

8          *3. Amount Offered in Settlement*

9          Overall, the amount offered in settlement weighs towards approval of the settlement.  First,

10  the parties contend the proposed PAGA payment represents 22.8% of the $86,554 that Patel's trial

11  expert valued the PAGA claims.[5]  (Nordrehaug Decl. ¶ 6.)  Second, over 80% of the PAGA

12  payment is to be paid to the aggrieved employees, with the remaining approximately 19%

13  ($3,701.06) to be paid to the LWDA.  This appears to be an adequate amount to advance PAGA's

14  purpose of deterring noncompliance with California's labor law.  Moreover, only the aggrieved

15  employees' PAGA claims are being released.  No individual claims of the aggrieved employees

16  (besides Patel) are being released that are not tied to PAGA.  As the Settlement Agreement states,

17  "in no event shall the PAGA Released Claims in this Settlement Agreement release any claim of

18  any individual other than the Plaintiff, including any class claim, which does not arise under

19  PAGA."  (Dkt. 138, Ex. 1 at ¶ III(5).)

20         As for Patel's individual settlement amount, although $20,000 appears to be quite generous

21  on its face, the parties assert this is less than half of what Patel's trial expert valued her individual

22  claims ($49,224).  (Nordrehaug Decl. ¶ 3.)  Moreover, Patel is the only named plaintiff, and she

23  has borne the risk alone in pursuing litigation against a former employer for several years.  In light

24  of the circumstances, her individual settlement amount appears to be reasonable.

25

26  ───────────────

27  [5] The parties state in their joint brief that there are approximately 783 alleged violations of the
    California Labor Code.  (Dkt. 142 at 5.)

28                                                          ORDER APPROVING PAGA SETTLEMENT
                                                            CASE NO. 14-cv-04781-RS

1  The amount set aside for the settlement administrator, Simpluris, ($5,261) does not

2  appear to be excessive.  Moreover, any surplus is to be added to the PAGA payment.

3  Finally, as for the attorneys' fees and costs, PAGA provides for reasonable awards but

4  does not provide a specific standard for evaluating attorneys' fees in a settlement of PAGA claims.

5  Cal. Lab. Code § 2699(g)(1).  In the Ninth Circuit, district courts generally may award attorneys'

6  fees under a fee-shifting statute using either the lodestar method or the percentage-of-the-fund

7  method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *see also Rincon*, 2018

8  WL 828104, at *5 (approving attorneys' fees in a PAGA case using both the lodestar and the

9  percentage methods); *Ramirez*, 2017 WL 3670794, at *6-7 (approving attorneys' fees in a PAGA

10  case using the lodestar method).

11  The proposed attorneys' fees ($80,000) and costs ($60,000) constitute the largest single

12  awards in the Gross Settlement Amount (combined they are almost 76% of the total settlement).

13  Patel's counsel estimate that they have collectively spent 909.45 hours litigating this case for over

14  five years and calculate a lodestar fee of $437,549.75.  (Nordrehaug Decl. ¶ 4 & Ex. 1 at 45.)  The

15  total fee is based on hourly rates of $175-795.  Thus, their requested fee award is approximately

16  18% of the lodestar.  This appears to be reasonable in light of over five years of work involving

17  substantial discovery, motion practice, and mediation efforts.  The request for $60,000 in costs

18  also seems appropriate, particularly since it constitutes only 61% of counsel's estimated

19  $99,118.54 of costs.  (Nordrehaug Decl. ¶ 5 & Ex. 1 at 51.)  Therefore, this factor favors

20  approving the settlement.

21  *4. Extent of Discovery Completed and Stage of the Proceedings*

22  This case has been litigated for several years: originally filed in 2013 and removed to

23  federal court in 2014.  At the time the proposed PAGA settlement was reached, the parties had

24  completed both percipient and expert discovery and the parties were preparing for trial.  Because

25  the parties have engaged in extensive discovery and worked on this case for several years, this

26  factor weighs in favor of finding the settlement fair, reasonable, and adequate.

27

28  ORDER APPROVING PAGA SETTLEMENT
CASE NO. 14-cv-04781-RS

### 5. *Experience and Views of Counsel*

Patel's counsel represents they have extensive experience in employment litigation, including both wage and hour class actions and representative PAGA actions. (Nordrehaug Decl. ¶ 8; *see also* Ex. 2.) Based upon this experience, Patel's counsel believes the PAGA settlement is fair, reasonable, and adequate. Furthermore, Patel's counsel notes that Nike's counsel have been successful in defeating class actions and PAGA actions at the trial court level and on appeal. Based on the conduct observed during the approximately five years of litigation of this case (including losing a motion for class certification), Patel's counsel reasonably believe that Nike would continue to defend the claims aggressively through trial and through appeal, if necessary. This factor favors approving the PAGA settlement.

### 6. *The Presence of a Government Participant*

As discussed above, the LWDA has not directly intervened in this case or spoken on the proposed PAGA settlement. Therefore, this factor is neutral.

## V. CONCLUSION

For the foregoing reasons, the settlement agreement between Patel and Nike is approved and the case is terminated. Jurisdiction is retained to resolve disputes under the settlement agreement.

**IT IS SO ORDERED**.

Dated: May 8, 2019

_____
RICHARD SEEBORG
United States District Judge